Taylor **POOLE**, Claimant/Appellant,

v.

**CITY OF ST. LOUIS**,
Employer/Respondent,

and

**Treasurer of the State of Missouri, as Custodian of Second Injury Fund, Respondent.**

No. ED 94052.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 5, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 13, 2010.

Application for Transfer Denied
Jan. 25, 2011.

Charles W. Bobinette, St. Louis, MO, for Claimant/Appellant.

Thomas J. Goeddel, St. Louis, MO, for Employer/Respondent.

Carol L. Barnard, St. Louis, MO, for Respondent.

SHERRI B. SULLIVAN, P.J.

*Introduction*

Taylor Poole (Claimant) appeals from the November 23, 2009 decision of the Labor and Industrial Relations Commission (Commission), affirming and adopting the awards of the Administrative Law Judge (ALJ). We affirm in part and reverse and remand in part.

*Factual and Procedural Background*

Claimant was injured at work on two separate occasions. At the time of his two work accidents and resulting injuries, Claimant was employed by the City of St. Louis (Employer) as an airfield maintenance worker. In Injury No. 02–055173, which occurred on April 27, 2002, Claimant tripped over the tines of a forklift, falling forward onto his hands, injuring his neck, wrists and ankles. In Injury No. 03–062880, which occurred on June 24, 2004, Claimant hurt his back lifting a 70–pound auger.

On April 27, 2002, after his first work accident, Claimant was admitted to DePaul Health Center (DePaul) under the care of Dr. Terry J. Weiss (Dr. Weiss). The next day, Claimant underwent open reduction and internal fixation of the left distal fibula and closed reduction of the dislocation and subluxation of the left ankle. He was placed in a fracture boot for a third-degree sprain of his right ankle. On May 2, 2002, he was discharged from DePaul.

Over the next nine months, Dr. Weiss treated Claimant's ankle, wrist and neck injuries. On May 15, 2002, he was diagnosed with severe degenerative arthritis at the C4–5, C5–6 and C6–7 with osteophyte formation. Claimant also reported bilateral hand and arm pain, numbness and tingling. Electrical studies were positive for bilateral carpal tunnel syndrome (CTS), which Dr. Weiss believed was secondary to his walking with crutches. Claimant was readmitted to DePaul on July 7, 2002. On July 9, 2002, Dr. Weiss removed screws and debrided and closed an infected wound.

Employer referred Claimant to Dr. Gary Schmidt (Dr. Schmidt). On October 14, 2002, Claimant reported problems of ankle swelling and pain, neck pain and bilateral hand pain and numbness. Dr. Schmidt recommended additional therapy. Claim-

ant finished therapy on November 11, 2002, and returned to work on November 13, 2002.

On November 14, 2002, Claimant's left ankle gave out, causing him to fall from a ladder. After additional conservative care, he was returned to full duty on December 3, 2002. Although Claimant had a dull ache to sharp pain in his ankle, Dr. Weiss felt Claimant was at maximum medical improvement (MMI), rated the left ankle disability at 30 percent and released him from his care on December 30, 2002.

Claimant saw his own doctor, Dr. Steven Knapp (Dr. Knapp), on January 27, 2003. Claimant reported ongoing neck, left shoulder and left ankle pain. On February 10, 2003, Employer referred Claimant back to Dr. Schmidt, who recommended surgery to remove the hardware in his ankle, which was performed on February 27, 2003, followed by therapy.

On March 10, 2003, Claimant tripped over a bathroom threshold at his home while wearing his surgical shoe, injuring his low back below the belt line. Before this incident, he had no problem with his low back. Employer referred Claimant to Concentra for treatment, where it was found he had pain with bilateral leg raises and pain at forward flexion at 45 degrees and extension at 10 degrees. Claimant was prescribed therapy three times per week, continued on his current medication and kept off work because Employer could not accommodate his restrictions. On March 28, 2003, Claimant was released to regular duty for his back. On April 8, 2003, Dr. Schmidt released Claimant without rating his disabilities.

Claimant continued to have problems with his ankles, low back and hands; had swelling in his ankles; and difficulty standing, walking, and lacing his boots. Claimant relied on co-workers to assist him with lifting and bending tasks. He contacted Employer's Commissioner on the Disabled because of his problems in trying to do his job.

On June 24, 2003, Claimant suffered his second work accident, injuring himself while lifting a 70–pound auger. Claimant described his pain as going around his waist and into the hips, and testified that he had no pain in his legs from this accident. Employer sent him to Concentra, where records indicate that his symptoms increased with flexion, extension, sitting, lifting and twisting; and palpation was positive for pain at the L2 and L5 bilaterally. Claimant was diagnosed with a lumbar strain and treated with Celebrex, an anti-inflammatory; Tramadol and Darvocet for pain; and therapy. He was restricted to a 5–pound lifting limit, a 10–pound pushing limit, a 10 times per hour bending limit and prohibited from driving a company vehicle.

Claimant continued to have low and mid-back pain with restricted range of motion, so Employer referred Claimant to an orthopedist, Dr. Thomas Lee (Dr. Lee). On July 18, 2003, Claimant's first visit with Dr. Lee, the doctor noted tenderness in the lumbar region and limited range of motion. Dr. Lee diagnosed a lumbar strain, clearing Claimant to return to work with a 25–pound lifting limit and no bending. Dr. Lee noted Claimant's trip and fall over the bathroom threshold, and that Claimant stated that his symptoms from that fall had resolved. Dr. Lee and Dr. Benz, another doctor in Dr. Lee's office, continued Concentra's medication therapy, and added Lodine, another anti-inflammatory. Dr. Lee testified that these medications were reasonable and necessary to alleviate the effects of Claimant's work-related injuries.

On July 21, 2003, Claimant started physical therapy at ProRehab, where it was

documented that Claimant had back and left leg pain, numbness and weakness; that he walked with an antalgic gait favoring his painful left leg and had an L3/4 extension restriction. It was also noted that examination of the left gastroc muscle, or calf, showed a neurological loss of strength of 20 percent, and a substantial loss of range of motion of the low back in all planes.

On August 8, 2003, Claimant saw Dr. Lee again, who noted some improvement in Claimant's condition but that Claimant still reported significant pain. Dr. Lee did not think an MRI was necessary at that time, increased Claimant's Celebrex dosage, and ordered continued therapy.

On August 21, 2003, Claimant injured himself while helping his wife flip a mattress at home. On August 22, 2003, Claimant saw Dr. Lee, complaining that his back pain increased after he helped his wife flip the mattress, and that he had pain in his back and left calf. Dr. Lee noted that this was the first time Claimant had indicated to Dr. Lee that he had pain in his lower extremities. Dr. Lee ordered an MRI, which was performed on August 23, 2003, showing degenerative disc disease at L4–5 and L5–S1 and a small left L4–5 foraminal protrusion, without definite neural impingement.

On August 29, 2003, Claimant saw Dr. Lee again, complaining of back pain and left calf cramps. Dr. Lee ordered epidural steroid injections with selective left L4 nerve blocks to treat Claimant's pain and gain diagnostic information. Dr. Lee stated that by anesthetizing the nerve root, if there is pain relief, it can be determined what is causing the problem. Dr. Lee diagnosed sciatica, indicating a bundle of nerves as opposed to a specific nerve such as L4. The pain specialists did not follow Dr. Lee's order and instead injected the L4–5 disc space. Claimant noted some improvement for two days, suggesting the area treated was the cause of his problem. Claimant had a second L4–5 injection on September 11, 2003. Claimant also attended therapy from September 2, 2003 to September 12, 2003.

On September 15, 2003, Claimant was involved in a motor vehicle accident, driving 40–45 mph when he was rear-ended. Claimant was thrown forward and backwards in his seat, restrained by his seatbelt, causing the pain in his lower back and shoulder to increase. Claimant was taken by ambulance to the emergency room at Barnes Hospital, released and directed to follow up with his primary physician. Claimant saw his personal doctor, Dr. Knapp, twice following the September 15, 2003 accident. Claimant did not tell Dr. Knapp about the mattress incident. Claimant testified that the auto accident temporarily increased his symptoms for ten days to two weeks.

On September 19, 2003, Claimant returned to therapy at ProRehab, where he reported increased back pain both prior to and after receiving his injections. Claimant also reported functional limitations with prolonged sitting, standing and walking, bending forward and lifting more than 10 pounds. On September 22, 2003, Dr. Lee recommended a functional capacity evaluation (FCE) and kept Claimant on light-duty restrictions.

October 1, 2003 was Claimant's last visit with Dr. Lee. Dr. Lee stated that Claimant's left lateral bending was diminished compared to the right and his forward flexion was diminished by approximately 50 percent. Dr. Lee felt Claimant was stationary and gave him permanent restrictions of no lifting more than 25 pounds. Claimant stated that he was uncomfortable lifting more than 10 pounds.

Dr. Lee assessed Claimant's disability with regard to his lower back at 4 percent of the body as a whole, of which 1 percent was attributable to the June 24, 2003 work injury. Dr. Lee opined that the remaining 3 percent was attributable to Claimant's preexisting degenerative condition of the spine and a prior back injury. Dr. Lee also stated that he believed the mattress incident and the September 16, 2003 auto accident caused Claimant to have additional and different complaints. Dr. Lee found that the August 23, 2003 MRI findings, if not completely, in large part, were pre-existing.

On October 5, 2003, Claimant reported back to work, where he was informed by Employer that he was being laid off for budgetary reasons. Claimant was recalled by Employer in May 2005, but he failed the physical due to his back limitations.

Dr. Knapp referred Claimant to Dr. T.Z. Chen (Dr. Chen) for pain management. Dr. Chen treated Claimant from November 21, 2003 to early January 2005, when his insurance ran out. Claimant complained of stabbing and throbbing back pain, which was made worse with pushing, pulling, lifting, bending and standing too long. The pain affected his mood, which caused depression and anger. Dr. Chen administered nine sympathetic nerve blocks. The injections improved his pain level for a few days. Dr. Chen prescribed Pamelor; Lexapro for Claimant's depression, and Oxycontin and Methadone for pain and therapy. Dr. Chen's charges totaled $7,205.

Claimant had therapy at ProRehab from July 26, 2004 until August 6, 2004, and at Rehabilitation Institute from September 16, 2004 until November 23, 2004, for which the charges were $300 and $776 respectively. Therapy improved Claimant's range of motion, but not his pain. Claimant testified that his improved body

mechanics marginally reduced the occurrence and severity of his symptoms, but that overall there were no significant changes in his low back and radicular symptoms.

On January 5, 2005, Claimant made demand by letter upon Employer for payment of his medical expenses incurred to date. When Employer failed to respond, Claimant filed a verified motion for hardship on February 8, 2005 for the continuation of disability and medical benefits. Between February 9, 2005 and October 2, 2006, Claimant was treated at the Community Health in Partnership Services (CHIPS) for neck, lower back and left ankle pain, carpal tunnel symptoms, and depression. He was prescribed a waist stabilizer and a thumb splint for his CTS. Claimant was continued on Oxycontin, Oxycodone, Methadone and Effexor by CHIPS's Dr. LaDonna Finch (Dr. Finch). The cost of treatment at CHIPS was $314.99, including the prescribed items. Dr. Finch limited Claimant's lifting to 10 pounds and no more than 2 hours of standing or walking and 6 hours sitting with normal breaks in an eight-hour work day.

Claimant was involved in a second automobile accident on April 19, 2005, injuring his upper back, right knee, shoulder and hands. X-rays of his right knee and thoracic spine taken at Barnes Hospital showed no fracture or misalignment. Claimant was given ibuprofen and released.

From May 27, 2005 until August 4, 2005, Dr. Jung Sook Kim (Dr. Kim) treated Claimant's low back and ankle complaints with acupuncture and electrical stimulation. The cost of treatment was $660. Dr. Knapp testified the treatment was reasonable and necessary to alleviate the effects of Claimant's work-related injuries.

On June 10, 2005, Claimant was treated at People's Health Center (PHC) for trouble with his right knee and hands. Claimant reported that since the 2005 automobile accident, his hand pain had increased intermittently with tingling and numbness. Claimant was referred to ConnectCare for nerve conduction studies which showed moderate to severe bilateral median neuropathy, worse on the left. Surgery was recommended.

Claimant returned to Dr. Knapp in October of 2006. Dr. Knapp treated him monthly for his neck, back and ankle pain, and depression. The charges for Dr. Knapp's treatment totaled $3,733 through October 6, 2008. Dr. Knapp testified Claimant had chronic effusion of his left ankle and crepitus; a marked decrease in endurance and ability to stand on the left ankle; periodic pain in his right ankle with effusion, indicating the development of arthritis, probably secondary to his April 27, 2002 right ankle sprain; and palpable paravertebral spasms and decreased range of motion of the low back secondary to pain and arthritic changes, which Dr. Knapp found were related to his March 10, 2003 threshold trip and June 24, 2003 work injury. Claimant also had upper back pain, thoracic pain, decreased range of motion and endurance, headaches and neck pain.

Dr. Knapp prescribed Oxycontin, Oxycodone and Vicodin for pain; Neurontin for peripheral neuropathy; Naproxen and Robaxin as anti-inflammatories and muscle relaxers; and an anti-depressant. Dr. Knapp believed Claimant's depression developed as a result of his chronic pain and economic hardships caused by his June 24, 2003 work accident. Dr. Knapp anticipated seeing Claimant monthly. From May 2, 2002, until January 14, 2009, Claimant's medications totaled $18,963.04.

In August 2004, Claimant applied for help from the Missouri Division of Vocational Rehabilitation. In August 2006, Claimant was awarded Social Security disability benefits backdated to October 1, 2003. Claimant made three unsuccessful attempts to return to work part-time. Between March 26, 2005 and June 16, 2005, Claimant worked for Securitas Security Services USA, Inc. as a security guard, earning $395.07. From October 4, 2006 through October 20, 2006, he earned $441.69 working part-time for Stratford Co. as a night manager. From February 2, 2007 through February 10, 2007, he worked for Bethesda Health Group as a bus driver, earning $206.85. Claimant quit all of these jobs because of increased low back pain.

Claimant testified that his back and leg pain keep him from working. He can only walk about a half a block without stopping to rest. If he sits too long, he is uncomfortable and his back and legs begin hurting. To alleviate his pain, he tries sitting in different positions, leaning forward, sitting straight up, standing, walking, lying down and elevating his left leg, and using ice and heat. He wears prescriptive stockings to control the swelling in his ankles. When he shops or tries to walk for exercise, he wears a plastic support brace on his left ankle. He has problems falling asleep and getting comfortable because of his back and leg complaints. His sleep is interrupted by his back pain, cramping in his left leg and numbness and tingling in his hands. During the day, he lies down 2 or 3 times for at least 15 to 20 minutes due to his back pain. He has problems lifting and carrying things; using the bathroom; showering and getting dressed; bending over to tie his shoes; and driving. Being unable to work and assist his wife at home has made him feel unimportant and depressed, having thoughts of suicide.

On March 6, 2006, Claimant was seen by Dr. Samuel Bernstein (Dr. Bernstein), a licensed psychologist and vocational counselor. Based on his testing, interview and observation of Claimant, Dr. Bernstein concluded Claimant had major depression and severe anxiety as a result of his two work-related injuries that required treatment. Dr. Bernstein opined that because of Claimant's physical impairments, he would have difficulty getting through an 8–hour workday because of his pain, and that several factors contribute to Claimant's unemployability, to-wit: he is approaching advanced age; he has done essentially labor-type work and lacks transferable skills; his impairments as a result of his work-related accidents interfere with his sitting, bending and standing; and his pain and depression interfere with his persistency of pace, concentration and keeping a regular schedule.

On July 10, 2006, Claimant was examined by Dr. Anthony E. Sudekum (Dr. Sudekum) at Employer's request for his hand and wrist complaints. Dr. Sudekum recommended carpal tunnel release surgery, but believed that the primary cause of Claimant's bilateral CTS was chronic inflammation of the wrists and hands due to his significant arthritis.

At Claimant's attorney's recommendation, Dr. David Volarich (Dr. Volarich) examined Claimant on March 8, 2004, and on September 11, 2006. From his examinations of Claimant and findings therefrom, Dr. Volarich concluded that the April 27, 2002 work accident was the substantial contributing factor in causing a 45 percent permanent partial disability (PPD) of the left lower extremity at the ankle; 20 percent PPD of the right lower extremity at the ankle; 20 percent PPD of the body as a whole at the cervical spine due to aggravation of degenerative disc disease and degenerative joint disease that required

conservative treatment accounting for ongoing neck pain and lost motion; 15 percent PPD of the left upper extremity at the wrist due to a sprain injury causing ongoing wrist pain and parasthesias; and 15 percent PPD at the lumbosacral spine due to the lumbar strain syndrome that required conservative care, taking into account the injury's contribution to Claimant's back pain and lost motion. Dr. Volarich further opined that the combination of Claimant's disabilities had a synergistic effect and a load factor should be added.

Dr. Volarich also opined that as a direct result of the June 24, 2003 accident, Claimant sustained an industrial disability of 25 percent of the lumbosacral spine due to a disc protrusion at the L4–5 to the left with left leg parasthesias, as well as causing a disc protrusion at the L5–S1 centrally, aggravating his low back degenerative disc disease and degenerative joint disease. It should be noted that although Claimant told Dr. Volarich that he began to have pain radiating into the left calf as a result of the June 24, 2003 accident, on cross-examination Claimant testified that the pain he had after that particular accident was in the middle part of his back, mid to low beltline, and that he did not have pain in his legs at that time.

Dr. Volarich restricted Claimant's activities referable to his spine, ankles, wrists and neck as a result of the combination of his work-related injuries. Dr. Volarich testified Claimant was unable to engage in any substantial gainful employment as a result of the combination of the diagnosed conditions and disabilities resulting from his work-related injuries. Dr. Knapp shared this conclusion.

On February 12, 2007, Claimant was examined by Dr. Bruce Schlafly (Dr. Schlafly), a board certified hand specialist. Dr. Schlafly opined that Claimant's work activities as an airfield maintenance work-

er, as well as his use of crutches after his ankle fracture, were substantial contributing factors in causing Claimant's bilateral CTS. He found that the April 19, 2005 auto accident aggravated Claimant's pre-existing CTS, requiring surgery. Dr. Schlafly found that Claimant had a 30 percent PPD of each hand, of which one-third (10 percent) was due to his employment activities and his use of crutches following his ankle injury and two-thirds (20 percent) was due to the April 19, 2005 auto accident.

For the injuries from Claimant's April 27, 2002 work accident, temporary total disability (TTD) was paid from April 27, 2002 until December 12, 2002 and from February 27, 2003 until April 8, 2003. The Administrative Law Judge (ALJ) awarded Claimant 10 percent PPD of the left wrist, 45 percent of the left ankle, 10 percent of the right ankle and 5 percent of the cervical spine, totaling 122.75 weeks of compensation. For the injuries from his June 24, 2003 work accident, TTD was paid from June 24, 2003 until October 4, 2003. The ALJ awarded Claimant 12.5 percent PPD of the body as a whole, referable to the low back, against Employer for 50 weeks of compensation and against the Second Injury Fund for 25.91 weeks of compensation. Claimant applied for review by the Commission, which affirmed and adopted the ALJ's decision on both awards. This appeal follows.

### Points on Appeal

In his first point, Claimant contends that the Commission erred in awarding him no disability for his right wrist and low back injuries and only a 5 percent disability for his neck injury from the April 27, 2002 work injury because (a) the denial of right wrist disability, based upon the finding that Claimant's bilateral carpal tunnel syndrome resolved after he stopped using crutches, is not supported by the record, is inconsistent with the award of left wrist disability and although his right wrist injury was not listed in the claim, the Commission misapplied the law since the issue was litigated without objection; (b) the award of only 5 percent disability of the cervical spine is contrary to the unimpeached and uncontradicted lay and medical evidence that Claimant had pinching and burning in his neck, his range of motion was severely restricted, palpation elicited pain in the trapezius muscle and is inconsistent with the finding that Claimant had a 20 percent PPD of the cervical spine; and (c) the denial of disability for Claimant's March 10, 2003 injury, based upon the finding that his back pain was transient and had completely resolved is not supported by the record, the Commission misapplied the law since pain is not a prerequisite for a disability award and the award is contrary to the unimpeached and uncontroverted medical evidence that the injury contributed to Claimant's permanent back disability.

In his second point, Claimant maintains that the Commission erred in awarding no disability for his left leg complaints due to the June 24, 2003 work injury based on its finding that the genesis of Claimant's radicular pain was the mattress incident, because Claimant's left leg complaints were traceable to the June 24, 2003 work injury in that (a) prior to the mattress incident, Claimant had numbness, tingling, pain and loss of strength in his left leg and lateral calf; (b) the mattress incident temporarily increased Claimant's symptoms but was not the cause of his left lateral calf pain; (c) according to Dr. Lee, Claimant did not have radicular signs following the mattress incident; and (d) applying the proper causal connection test for awarding disability, the overwhelming weight of the evidence established that Claimant's radicular pain was traceable to the June 24, 2003 work accident.

In his third point, Claimant asserts that the Commission erred in failing to award him past due medical expenses, interest and future medical care because (a) Claimant's past medical care flowed from his work-related injuries, including his back and left leg pain; (b) the Commission failed to apply the proper test in considering the award of medical expenses and interest since the unimpeached and uncontradicted evidence established that the treatment helped alleviate the effects of Claimant's work-related injuries, although it arguably also treated non-compensable conditions; (c) the finding that Claimant did not demand additional treatment is not supported by the record and is contrary to the overwhelming weight of the evidence that written demands were made and Employer refused to provide additional treatment; (d) the uncontroverted and unimpeached evidence established that Claimant needs future medical treatment to help alleviate the effects of his work-related injuries; and (e) the Commission failed to resolve the issue of Claimant's right to past medical expenses, interest and future medical care as presented in its review of the April 27, 2002 work accident.

In his fourth point, Claimant claims that the Commission erred in awarding him only PPD benefits for the June 24, 2003 work accident based on its finding that the causes of Claimant's back and left leg pain were the mattress incident and two auto accidents because this finding is not supported by the record and the award is contrary to the overwhelming weight of the evidence that Claimant was permanently and totally disabled in that (a) Claimant was unable to perform any meaningful work following his June 24, 2003 work injury; (b) the mattress incident and the two automobile accidents did not contribute to his inability to work; and (c) the overwhelming weight of the evidence established that Claimant was permanently and totally disabled as a result of his June 24, 2003 back injury alone or in combination with his pre-existing disabilities.

In his fifth point, Claimant argues that the Commission erred in failing to award conditional survivor benefits to Donetta Kee (Kee) because under Section 287.230.2,[1] if Claimant dies from causes other than the work injuries and is survived by Kee, she is entitled to Claimant's benefits, as reviewable under Section 287.495.1, in that Claimant lived with Kee on June 24, 2003 and while the claim was pending, Claimant married her.

*Standard of Review*

Section 287.495.1 sets forth our standard of review. Pursuant to the statute, we may only modify, reverse, remand or set aside the Commission's award if: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award.

In *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo.banc 2003), the Missouri Supreme Court determined that we no longer view the evidence in the light most favorable to the Commission's award. *Townser v. First Data Corp.,* 215 S.W.3d 237, 241 (Mo.App. E.D.2007). Rather, we consider the evidence in the context of the whole record to determine whether it contains sufficient competent and substantial evidence to support the award, or whether the award is contrary to the overwhelming weight of the evidence. *Hampton,* 121

1.  All statutory references are to RSMo 2000, unless otherwise indicated.

S.W.3d at 222–23; *Townser*, 215 S.W.3d at 241. We must affirm the Commission's decision unless it was contrary to the overwhelming weight of the evidence. *Hampton*, 121 S.W.3d at 223; *Townser*, 215 S.W.3d at 241.

■ While this Court defers to the Commission on issues of fact, questions of law are reviewed *de novo*. *Townser*, 215 S.W.3d at 241, citing *Endicott v. Display Technologies, Inc.*, 77 S.W.3d 612, 615 (Mo. banc 2002). In reviewing a worker's compensation award, we review the findings of the Commission and not those of the ALJ. *Townser*, 215 S.W.3d at 241, citing *Sutton v. Vee Jay Cement Contracting Co.*, 37 S.W.3d 803, 807 (Mo.App. E.D.2000) (overruled on other grounds by *Hampton*, 121 S.W.3d at 225). When, as here, the Commission affirms or adopts the findings of the ALJ, we review the decision and findings of the ALJ as adopted by the Commission. *Townser*, 215 S.W.3d at 241; *Sutton*, 37 S.W.3d at 807.

### Discussion

### Point I

### Right Wrist

Claimant maintains that the Commission's denial of right wrist disability, based upon the finding that Claimant's bilateral CTS resolved after he stopped using crutches, is not supported by the record.

Dr. Weiss found that the CTS was secondary to his walking with crutches. Additionally, Dr. Schlafly, a board certified hand specialist, opined that Claimant's work activities as an airfield maintenance worker, as well as his use of crutches after his ankle fracture, were substantial contributing factors in causing his bilateral CTS. He found that the April 19, 2005 auto accident aggravated Claimant's pre-existing CTS, requiring surgery. Dr. Schlafly found that Claimant had a 30 percent PPD of each hand, of which one-third (10 percent) was due to his employment activities and his use of crutches following his ankle injury and two-thirds (20 percent) was due to the April 19, 2005 auto accident.

■ While Claimant presented evidence regarding the cause of his right wrist disability, he did not claim injury to his right wrist before the ALJ, but only specifically to his left wrist, caused by the April 27, 2002 work accident. He did allege on review to the Commission that he had bilateral carpal tunnel syndrome that had not resolved, and therefore was disabled in both wrists.

Claimant cites two cases which he says hold that "it is enough that the issue was litigated, whether pleaded or not." See *Snow v. Hicks Bros. Chevrolet, Inc.*, 480 S.W.2d 97, 100 (Mo.App.1972), and *Balsamo v. Fisher Body Division–General Motors Corp.*, 481 S.W.2d 536, 539 (Mo.App. 1972). *Snow* provides that "neither *Nichols* nor any authority it cites holds that, for purposes of appellate cognizance, an affirmative defense to a Claim for Compensation can be raised only by pleading it in the Answer. It is enough that the defense has been litigated before the Commission, whether pleaded or not." *Id.* at 100. *Snow* is not on point because it involves a statute of limitations affirmative defense, not a claim for disability. *Balsamo* involves a specific claim for "medical aid," regarding which the Court found that "[t]he referee later ruled that the term medical aid is broad enough to include nursing services," and that this ruling was correct, in that "Section 287.140 … provides in part that 'in addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical and hospital treatment, including nursing … as may be reasonably required. . . .' " *Id.* at 538. Again, this sce-

nario is fundamentally different from the one in the case at hand, where Claimant did not claim disability for a specific body part.

The Commission specifically noted in its Rulings of Law that, "Regarding his wrist complaints, Claimant did not claim injury to his right hand or wrist." We cannot find error with this ruling, because it is supported by the evidence in the record.

### Neck

■ Claimant asserts that the award of only 5 percent PPD of the cervical spine is contrary to the unimpeached and uncontradicted lay and medical evidence that Claimant had pinching and burning in his neck, his range of motion was severely restricted, and palpation elicited pain in the trapezious muscle and is inconsistent with the finding that Claimant had a 20 percent PPD of the cervical spine.

■ The determination of a specific amount or percentage of disability awarded to a claimant is a finding of fact within the unique province of the Commission. *Cardwell v. Treasurer of State of Missouri*, 249 S.W.3d 902, 907 (Mo.App. E.D. 2008). In determining the percentage of disability, the Commission is not bound by the percentage estimates of medical experts and it may consider all of the evidence, including the testimony of the employee. *Id.*

■ Again, where there are differing medical opinions, the Commission determines whose opinion is the most credible, and we will affirm that determination if supported by substantial and competent evidence. *Townser*, 215 S.W.3d at 242. We cannot disturb that determination on review unless it is against the overwhelming weight of the evidence. *Id.* Here, it is not, because Dr. Lee estimated Claimant's percentage of disability in his cervical

spine to be 4 percent, 1 percent due to the June 24, 2003 auger lifting incident and 3 percent due to degenerative disc disease. Therefore, an award of 5 percent is not against the overwhelming weight of the evidence, even if Dr. Volarich gave Claimant a 20 percent PPD rating for his cervical spine.

### Bathroom Threshold Injury

■ Claimant asserts that the denial of disability for his March 10, 2003 injury, based upon the finding that his back pain was transient and had completely resolved is not supported by the record and the Commission misapplied the law since pain is not a prerequisite for a disability award and the award is contrary to the unimpeached and uncontroverted medical evidence that the injury contributed to Claimant's permanent back disability.

We note that Claimant's March 10, 2003 accident occurred at home, when he tripped over the threshold of his bathroom. Claimant alleges that Employer accepted liability for this accident and sent him to Concentra for treatment. Regardless, Claimant's insistence that there is unimpeached and uncontradicted evidence establishing that Claimant's back pain started long after his April 27, 2002 injury, i.e., when he tripped over his bathroom threshold on March 10, 2003, is without effect. The Commission is free to accept or reject uncontradicted and unimpeached testimony. *Dunn v. Treasurer of Missouri as Custodian of Second Injury Fund*, 272 S.W.3d 267, 273 (Mo.App. E.D.2008).

In any event, Claimant's medical records indicate that he sprained his back from the fall over the threshold. In his January 29, 2008 deposition, Dr. Lee testified that Claimant told him that a month of physical therapy had resolved his symptoms from that particular fall. Claimant himself also testified at the February 19, 2009 hearing

that he no longer had the pain that resulted from the threshold trip and fall. The Commission determines the credibility of witnesses and the acceptance or rejection of testimony cannot be disturbed on review unless it is against the overwhelming weight of the evidence. *Townser*, 215 S.W.3d at 242. Here, the Commission's denial of disability for Claimant's March 10, 2003 injury based upon its finding of fact that Claimant's back pain was transient and had completely resolved is not against the overwhelming weight of the evidence.

For the foregoing reasons, Point I is denied.

### Point II

■ Claimant contends his left leg complaints were traceable to the June 24, 2003 work injury and not caused by the August 21, 2003 mattress incident because there is evidence in the record that prior to the mattress incident, Claimant had numbness, tingling, pain and loss of strength in his left leg and lateral calf; there is evidence in the record that the mattress incident temporarily increased Claimant's symptoms but was not the cause of his left lateral calf pain; and Dr. Lee testified that Claimant did not have radicular signs following the mattress incident.

Dr. Lee did testify that a "straight leg test" performed by Claimant the day after the mattress incident was negative for radicular pain, but produced back pain. On the other hand, Dr. Lee testified that the day after the mattress incident was the first time Claimant had mentioned any lower extremity pain, and that it was the new onset of symptoms directly following the mattress incident that suggested that the June 24, 2003 work accident was not the cause of Claimant's leg pain. He also noted that on the human body diagram Claimant filled out to indicate his areas of pain after the June 24, 2003 work accident, Claimant did not note any pain in the legs portion of the diagram. Claimant only marked the low back area of the diagram to indicate where he was experiencing pain after that June 24, 2003 work accident. Claimant also specifically denied having any pain in either of his legs following the June 24, 2003 work accident.

Dr. Lee testified that "Given his clinical course over time, the lack of leg symptoms up until the time he was reporting them to me, suggest that it wasn't the trauma that happened back in June of '03 that caused those leg symptoms."

■ The Commission is charged with determining the credibility of witnesses and the acceptance or rejection of testimony cannot be disturbed on review unless it is against the overwhelming weight of the evidence. *Townser*, 215 S.W.3d at 242. Here, the Commission's findings as to which evidence and expert testimony were credible are not against the overwhelming weight of the evidence. Accordingly, Point II is denied.

### Point III

Employer claims that Claimant's contention that the Commission erred in failing to award Claimant past due medical expenses, interest and future medical care is without merit because Claimant failed to establish that Employer knew of the need for the treatment or refused to provide for that treatment.

Section 287.140 provides, in pertinent part:

1. [T]he employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or

disability, to cure and relieve from the effects of the injury. If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense.

. . .

10. The employer shall have the right to select the licensed treating physician, surgeon, chiropractic physician, or other health care provider; provided, however, that such physicians, surgeons or other health care providers shall offer only those services authorized within the scope of their licenses[.]

See also, *Meyers v. Wildcat Materials, Inc.*, 258 S.W.3d 77, 80 (Mo.App. S.D. 2008).

An employer is charged with the duty of providing the injured employee with medical care, but the employer is given control over the selection of a medical provider. *Blackwell v. Puritan–Bennett Corp.*, 901 S.W.2d 81, 85 (Mo.App. E.D.1995). It is only when the employer fails to do so that the employee is free to pick his own provider and assess those costs against his employer. *Id.* Therefore, the employer is held liable for medical treatment procured by the employee only when the employer has notice that the employee needs treatment, or a demand is made on the employer to furnish medical treatment, and the employer refuses or fails to provide the needed treatment. *Id.*

■ Claimant maintains that he informed Employer by letter dated January 5, 2005 that he had sought additional treatment between November 21, 2003 and November 26, 2004, and had been unable to get back to work, even with vocational services. Claimant contends that Employer did not respond to his letter, and so on February 8, 2005, Claimant filed a verified motion for hardship, outlining his course of medical treatment, and alleging that he remained totally disabled and in need of ongoing medical treatment.

The flaw in Claimant's argument is that he informed Employer of treatment that he *had already received.* The letter asks for prescription medicine costs totaling $2,870.45 from June 24, 2004 though September 16, 2004; costs of Dr. Chen's pain management treatment from November 21, 2003 though July 22, 2004, in the amount of $4,860.00; and medical records from Dr. Chen and The Rehabilitation Institute of St. Louis. Claimant did not give Employer notice of the treatment that he needed before he received it nor the opportunity to select the provider, or to provide or refuse to provide such treatment. Accordingly, Claimant incurred this treatment at his own expense. Section 287.140.1 and .10; *Blackwell,* 901 S.W.2d at 85; *Meyers,* 258 S.W.3d at 80.

■ Claimant did not ask for future expenses with regard to the April 27, 2002 accident in his claim for compensation. Therefore, it was not a stipulated issue for the Commission's determination, and thus there is no error in the Commission's failing to award future expenses for that injury. However, Claimant did request future expenses for his June 24, 2003 injury.

■ The Worker's Compensation Act permits the allowance for the cost of future medical treatment in a PPD award. Section 287.140.1; *Landers v. Chrysler Corp.,* 963 S.W.2d 275, 283 (Mo.App. E.D. 1997). The claimant is not required to present evidence on the specific medical treatment which will be necessary in the future in order to receive an award of future medical care. *Id.* However, where future medical benefits are awarded, the medical care must flow from the accident before the employer is to be held responsible. *Id.* It is not the claimant's burden to produce conclusive testimony or evidence to support his claim for future medical

292

benefits. *Id.* It is sufficient to award future medical benefits if the claimant shows by reasonable probability that he is in need of additional medical treatment by reason of his work-related accident. *Id.*

■■■■ Future care to relieve Claimant's pain should not be denied simply because he may have achieved MMI. *Landman v. Ice Cream Specialties, Inc.,* 107 S.W.3d 240, 248 (Mo.banc 2003). The statute entitles him to medical treatment as may be reasonably required "to cure and relieve from the effects of the injury." *Id.;* Section 287.140.1. "This means treatment that gives comfort or relieves even though restoration to soundness [a cure] is beyond avail." *Id.* at 249. Therefore, the finding that Claimant has reached maximum medical improvement is not inconsistent with a need for future medical treatment. *Id.*

■■■■ The Commission summarily denied, without explication, Claimant's request for future medical expenses due to his June 24, 2003 work accident. We note that in its Rulings of Law, the Commission stated that Dr. Volarich testified that Claimant's treatment from Dr. Chen was for his radicular pain, and since the Commission had made a finding that Claimant's radicular pain did not stem from his workplace accidents but rather only began after the mattress tipping incident, Dr. Chen's treatment bills, The Rehabilitation Institute bills and Claimant's prescriptive medication costs were not compensable. Specifically, the Commission wrote in its Rulings of Law:

> Dr. Volarich testified that the treatment from Dr. Chen was necessary due to the radicular pain. As I find the injury of June 23, 2003 did not cause radicular pain, I do not allow Claimant's claim for the billings of Dr. Chen, Pro-Rehab or Rehabilitation Institute as well as the medications involved.

Based on the entirety of the testimony, evidence and law, I find Claimant's claim for reimbursement of medical expenses and future medical care must be denied.

The transcript actually reveals that Dr. Volarich testified that it was the leg pain *as well as the back pain syndrome* that was necessitating Dr. Chen's treatment, to-wit:

> Q. [by Counsel for Second Injury Fund] And it's the radiating pain that's requiring the pain management with Dr. Chen?
>
> A. [by Dr. Volarich] Well, back pain in and of itself can require pain management, but in his case, I think it's the leg pain as well as the back
>
> pain syndrome that's requiring all the treatment.

Therefore, the Commission's Ruling of Law as set forth above is not supported by sufficient and competent evidence in the record, and cannot support its denial of future medical expenses. We accordingly remand for findings on Claimant's request for future expenses for pain management, including but not limited to injections, physical therapy and prescriptive medications, due to his compensable injuries.

Based on the foregoing, Point III is denied in part, as to past due medical expenses and interest, and granted in part, to be remanded for findings on future medical expenses.

*Point IV*

■■■■ Claimant maintains that the overwhelming weight of the evidence proved that Claimant was permanently and totally disabled by his back injury caused by the June 24, 2003 accident because he was unable to perform any meaningful work after the accident due exclusively to that

accident and not in any part to flipping the mattress or the two automobile accidents.

The record supports Claimant's contention that he was not able to return to any meaningful work after the June 24, 2003 accident; but the evidence in the record before the Commission does not support that his inability to work was due exclusively to the June 24, 2003 accident. Claimant himself testified that his lack of employment was due to his injuries, including the two auto accidents causing pain and limitation of function in his low back and left leg.

Dr. Lee testified that Claimant made no complaints of leg pain or pain radiating into the leg extremity until the mattress flipping incident in August 2003. Claimant underwent an FCE on September 26, 2003, which showed that Claimant was able to work at the medium-demand level. Three physicians treating Claimant, Dr. Lee, Dr. Schmidt, and Dr. Weiss, did not opine that Claimant could not work or had permanent total disability from the June 24, 2003 accident. Dr. Lee released Claimant to work on October 1, 2003 with a 25–pound lifting restriction. Dr. Lee rated Claimant's disability at 1 percent of the low back due to the work injury and 3 percent of the low back due to his degenerative arthritic condition.

Dr. Bernstein testified that Claimant is unemployable on the open labor market as a result of his two work-related injuries. Although Dr. Volarich found that Claimant was unable to do substantial work since June 2005 as a result of the combination of his disabilities, the doctor did not know of the September 15, 2003 auto accident, which Claimant claimed increased his back pain for 2 weeks and from which he claimed his ability to work was diminished, or of the April 19, 2005 auto accident, which Claimant maintained exacerbated his lower back injury from the June 24,

2003 accident. Dr. Knapp found Claimant was unable to work because of the combination of effects of the two work-related accidents, although Dr. Knapp was not aware of the mattress incident or the auto accidents and Claimant's complaints of pain and symptoms following them.

Where the opinions of medical experts are in conflict, the fact-finding body determines whose opinion is the most credible. *Townser*, 215 S.W.3d at 242. We will affirm the decision of the Commission to accept one of two conflicting medical opinions if that decision is supported by substantial and competent evidence. *Id.* The Commission is charged with determining the credibility of witnesses and the acceptance or rejection of testimony cannot be disturbed on review unless it is against the overwhelming weight of the evidence. *Id.*

Based on the foregoing, the Commission's decision not to award Claimant permanent total disability is not contrary to the overwhelming weight of the evidence in the record. *Hampton*, 121 S.W.3d at 223; *Townser*, 215 S.W.3d at 241. Point IV is denied.

*Point V*

Section 287.230 provides for the payment of compensation at the death of the employee as follows in pertinent part:

1. The death of the injured employee shall not affect the liability of the employer to furnish compensation as in this chapter provided, so far as the liability has accrued and become payable at the time of the death, and any accrued and unpaid compensation due the employee shall be paid to his dependents without administration, or if there are no dependents, to his personal representative or other persons entitled thereto, but the death shall be deemed to be the termination of the disability.

In the instant case, all of Claimant's compensation has accrued and become payable. Therefore, there is no accrued and unpaid compensation due to Claimant, and hence to his dependents in the event of his death. Furthermore, Claimant has not proven that Kee, to whom he was not married at the time of his accidents,[2] was his dependent at the time. Section 287.240(4) defines the word "dependent" in pertinent part as "... a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his or her wages at the time of the injury...." Accordingly, Point V is denied.

### Conclusion

The decision of the Commission is reversed and remanded with regard to future medical expenses as set forth in our resolution of Point III, and is otherwise affirmed.

CLIFFORD H. AHRENS, J., and LAWRENCE E. MOONEY, J., concur.

2. The record shows that Claimant married Kee in 2008.