**Jody DURBIN, Appellant,**

v.

**FORD MOTOR COMPANY, and Treasurer of Missouri as Custodian of the Second Injury Fund, Respondents.**

**Nos. ED 97082, ED 97083.**

Missouri Court of Appeals,
Eastern District,
Division Two.

July 10, 2012.

Todd Muchnick, St. Louis, MO, for appellant.

Benjamin Shelledy, Da–Niel Cunnigham, St. Louis, MO, for respondents.

LAWRENCE E. MOONEY, Judge.

The claimant, Jody Durbin, appeals the final award of the Labor and Industrial Relations Commission granting her compensation for permanent partial disability from her employer, Ford Motor Company, denying her past and future medical expenses, and granting an enhancement of permanent partial disability from the Second Injury Fund, rather than permanent total disability benefits. Because all issues on appeal hinge on the Commission's cred-

ibility determinations, we defer to the Commission and affirm the award.

*Factual and Procedural Background*

The claims in this case arise from injuries the claimant suffered to her back in June 1999 and to her left shoulder in November 2002 while working on the employer's assembly line.

The claimant testified that on June 16, 1999, she was installing casing into a car for seat mounting, which required her to bend over sideways into the vehicle. The vehicle on which she was working "jumped off the line," and several other vehicles struck it from the rear, twisting and jarring the claimant's body and causing immediate pain. The employer provided medical treatment for the claimant, and paid her temporary total disability benefits while she remained off work from June 29 to December 14, 1999.

The claimant continued to experience pain, tightness, and pressure in her midback and torso after her return to work. She sought treatment from her personal physician, who excused her from work from late January to early April 2000. The employer referred the claimant to Dr. Randolph for an evaluation on March 28, 2000. Dr. Randolph diagnosed the claimant with non-specific mid-back pain with a component of myofascial pain, and opined that the claimant had reached maximum medical improvement. He rated the claimant at "no more than 3%" permanent partial disability of the body as a whole as a result of the June 1999 injury.

After Dr. Randolph's evaluation, the employer provided the claimant with no further medical benefits related to her back injury, despite her requests. Over the next ten years, the claimant sought additional treatment from multiple providers, including chiropractic manipulations, massage therapy, trigger-point injections, radiofrequency ablations to the dorsal sensory nerve to the spine, and rhizotomies to destroy the nerve root innervating the painful area.

The claimant continued working on the employer's assembly line. On November 22, 2002, the claimant was lifting a front grill assembly into place when her left shoulder "locked." The employer provided medical treatment over an extended period. Dr. Jacques Van Ryn diagnosed the claimant with adhesive capsulitis, and assigned significant, permanent restrictions. The claimant worked for the employer with significant restrictions until October 2004, when the employer placed her on long-term disability.

The administrative law judge (ALJ) conducted a hearing on the two claims in June 2010 to consider the nature and extent of temporary total disability, the nature and extent of permanent partial disability, past medical expenses, and future medical care. The claimant testified that she had one incident involving her lower back about two years before the June 1999 accident. She testified, however, that she had no continuing problems or limitation from that incident, and that she took no medication for back pain before 1999. The claimant offered the reports and deposition of Dr. Thomas Musich, the deposition of Dr. Keith Wilkey, and medical bills incurred after her evaluation by Dr. Randolph in the stipulated amount of $163,422.61.

Dr. Musich evaluated the claimant in October 2004, and again in October 2008. In 2004, Dr. Musich rated the claimant at 25% permanent partial disability of the body as a whole as a result of her 1999 back injury, and at 25% permanent partial disability to the left shoulder. In 2008, he rated the claimant at 50% permanent partial disability of the body as a whole as a

result of the back injury, and 25% permanent partial disability at the left shoulder. Dr. Musich opined that the 1999 work injury resulted in chronic pain syndrome secondary to thoracic and cervical facet syndromes, myofascial pain, and symptomatic costochondritis. He attributed the change in his ratings from the claimant's first evaluation to the second to her deteriorating symptomatology during that time. The claimant testified on cross-examination that she felt about the same between her first and second visits to Dr. Musich.

Dr. Musich believed that the treatment the claimant received for her back and neck between the time of his first and second evaluations was causally related to her June 1999 work injury, and that she would need pain medication indefinitely. Dr. Musich opined that the combination of the claimant's disabilities was significantly greater than their simple sum. He wrote in his 2008 report that if the claimant could not obtain and maintain employment in the open job market, then he would consider her permanently disabled based upon the combination of her injuries.

Dr. Wilkey, a board-certified orthopedic spine surgeon, examined the claimant in July 2009. He diagnosed her with neuropathy for which he "had no explanation other than persistent symptoms," and testified to "some non-physiologic overlay in [the claimant's] presentation." Nonetheless, Dr. Wilkey believed that the medical treatment the claimant had obtained until that date was necessary and causally related to the 1999 work accident. He rated the claimant's disability at 6% of the body as a whole.

In addition, the claimant offered the deposition of rehabilitation counselor James England. Mr. England testified that the claimant was unemployable on the open labor market. The employer offered the deposition of Dr. Richard Hulsey, who rated the claimant at 10% permanent partial disability of the left shoulder.

The Commission made extensive credibility determinations, finding Dr. Musich's 2008 rating to be "the most unreliable." The Commission determined that the claimant suffered from 15% permanent partial disability of the body as a whole as a result of her 1999 back injury, and modified the ALJ's inconsistent award accordingly.[1] The Commission denied past and future medical expenses. The Commission then determined that the claimant sustained 15% permanent partial disability of the left shoulder as a result of her 2002 injury. The Commission concluded that the claimant's disability of the left shoulder, and the pre-existing disability combined to create an enhancement of 10% permanent partial disability for which the Second Injury Fund was liable.[2]

## Discussion

In four points on appeal, the claimant challenges the Commission's finding that certain expert opinions were flawed, the denial of past and future medical expenses, and the denial of permanent total disability benefits from the Second Injury Fund.

### Standard of Review

On appeal, we review only questions of law, and we may modify, reverse,

---

1. The ALJ found in the body of his award for the claimant's back injury that she sustained permanent partial disability of the body as a whole "in the range of [15%]." In the conclusion, however, the ALJ determined that the claimant sustained 17.5% permanent partial disability of the body as a whole.

2. The Commission modified the ALJ's award of an enhancement of 35% permanent partial disability to an award of 10% for which the Commission held the Second Injury Fund liable.

remand for rehearing, or set aside an award only where: 1) the Commission acted without, or in excess of, its powers; 2) the award was procured by fraud; 3) the facts found by the Commission do not support the award; or 4) the record lacks sufficient competent evidence to warrant making the award. Section 287.495.1 RSMo. (2000) [3]; *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003). To determine whether competent and substantial evidence supports the award, we examine the evidence in the context of the whole record. *Id.* at 223. We must affirm the Commission's decision unless it is contrary to the overwhelming weight of the evidence. *Poole v. City of St. Louis*, 328 S.W.3d 277, 288 (Mo.App. E.D.2010). The Commission determines the credibility of witnesses, and on review, we cannot disturb the Commission's acceptance or rejection of testimony unless it goes against the overwhelming weight of the evidence. *Id.* at 290.

## Point I

In her first point, the claimant asserts the Commission erred in finding that the expert opinions she submitted were flawed for failing to consider the effect of the claimant's pre–1999 back injury. She contends that, as a result, the Commission's awards directly contradict the evidence. We construe the gravamen of this point to be a challenge to the amount of the Commission's award of permanent partial disability for the claimant's back injury.

The claimant first argues that the Commission acted in excess of its powers because medical causation as it related to any injury or disability pre-dating June 1999 was not a contested issue. But as the parties stipulated, the nature and extent of temporary total disability and of permanent partial disability were at issue, as were past and future medical benefits and permanent total disability. Questions of credibility of the claimant and the experts, and whether the experts knew the claimant's full history of back problems, are certainly germane to all of these issues.

The claimant next contends that the only evidence in the record shows that the experts did, in fact, review the March 1999 records of Dr. Bemis, and thus presumably had a full understanding of the claimant's medical history. She complains that the Commission's focus on an alleged pre-existing injury led to its finding that the claimant and the expert opinions were unreliable, and thus resulted in a flawed award.

In March 1999, three months prior to her back injury at work, the claimant visited Dr. Bemis, a chiropractor, whose patient history stated that the claimant complained of "mid[-]thoracic pain, headache, and a catch in her right hip" that had caused problems for two and one-half years. Furthermore, the HealthSouth physical therapy record dated the week after the claimant's injury stated that the claimant had had pain for three years, and listed an unknown injury date. In late June 1999, only nine days after the accident, the claimant saw Dr. Thomas who noted that the claimant reported she believed physical therapy had "flared-up [an] old problem in [her] lower back." In early July 1999, the month after the accident, the claimant saw Dr. Jones, who recorded lower and mid-thoracic back pain and an accident history of "[a]pprox. 2 yrs ago." In mid-July 1999 and again in late July 1999, the claimant and Dr. Jones both signed an injury examination report reflecting an accident date of August 1997. None of Dr. Jones's records reference a

---

**3.** All statutory references are to RSMo. (2000).

June 1999 injury. And the claimant stated on Dr. Musich's intake questionnaires in 2004 and 2008 that she had no ongoing complaints prior to the June 1999 work injury.

Both of Dr. Musich's reports indicate that he reviewed Dr. Bemis's pre-accident record from March 1999 as well as Dr. Thomas's records and those of Health-South. But Dr. Musich's 2008 report then notes that "[b]efore 1999 [the claimant] was totally asymptomatic," which directly contradicts the records of Dr. Bemis, Dr. Thomas, and HealthSouth indicating the existence of problems for years prior to June 1999. Dr. Musich's reports do not mention Dr. Jones's records at all.

If Dr. Musich reviewed the records of Drs. Bemis, Thomas, and Jones and HealthSouth, then his evaluation blatantly disregards and contradicts all of those records. If Dr. Musich did not review the records of Drs. Bemis, Thomas, and Jones and HealthSouth, then he lacked important pieces of the claimant's medical history when he evaluated and rated her. In either event, the Commission was free to determine that this adversely affected the reliability of Dr. Musich's evaluations.

The claimant likewise argues that Dr. Wilkey reviewed Dr. Bemis's records, but the record does not support this contention. Dr. Wilkey never referred to the records of Drs. Bemis, Thomas, or Jones or of HealthSouth in his deposition. And while Dr. Wilkey testified that he reviewed all of the imaging studies for the claimant from 2000 to 2006, he could not say whether he had reviewed every one of the medical records contained in two binders and set before him at deposition by the claimant's counsel.

Third, the claimant complains that the Commission found Dr. Randolph's opinion more credible than that of Dr. Musich or Dr. Wilkey, and she argues that the Com-mission's suggestion that the claimant's recollection might be clouded lacked any support in the record.

The Commission determines the credibility of witnesses, and on review, we cannot disturb the Commission's accep-tance or rejection of testimony unless it goes against the overwhelming weight of the evidence. *Id.* at 290. Likewise, the Commission determines which is the most credible among differing medical opinions, and we will not disturb this determination unless it is against the overwhelming weight of the evidence. *Id.* at 289. Fur-thermore, the determination of a specific percentage or amount of disability award-ed to a claimant is a finding of fact within the unique province of the Commission. *Id.* In determining the percentage of dis-ability, the Commission is not bound by the percentage estimates of medical ex-perts, and the Commission may consider all of the evidence, including the claimant's testimony. *Id.* This is precisely what the Commission did here.

The Commission determined the 2008 rating of 50% permanent partial disability to the body as a whole assigned by Dr. Musich to be "the most unreliable." Among other factors, the Commission ob-served that this rating ignored the other experts' opinions and records, and was in-consistent with Dr. Musich's own 2004 rat-ing. Dr. Musich attributed the change in his ratings from the claimant's first evalua-tion to the second to her deteriorating symptomatology. Yet the claimant testi-fied on cross-examination that she felt about the same between her first and sec-ond visits to Dr. Musich.

While the Commission did, in fact, dis-count Dr. Musich's 2008 rating as not cred-ible, the Commission expressly considered Dr. Musich's 2004 rating of 25% perma-nent partial disability. The Commission

also expressly considered the ratings of Drs. Randolph and Wilkey, which the Commission stated failed to adequately account for the claimant's continued complaints and restrictions. The Commission balanced Dr. Musich's 2004 rating and the ratings of Drs. Randolph and Wilkey, finding 15% permanent partial disability to the body as a whole with regard to the claimant's back injury. We reiterate that the Commission determines the credibility of witnesses, and on review, we cannot disturb the Commission's acceptance or rejection of testimony unless it goes against the overwhelming weight of the evidence. *Id.* at 290. The Commission was free to make these credibility findings, to consider all the evidence, and to resolve conflicting evidence, which the Commission did here.

Furthermore, the evidence supports the Commission's determination that the claimant's memory may have been "clouded," and thus implicitly that her testimony was unreliable, because her testimony and the medical history she gave Dr. Musich directly contradict the history she gave Drs. Bemis, Thomas, and Jones and HealthSouth. In addition, the transcript of the administrative hearing reveals that while she could answer detailed questions requiring only a "yes" or "no" answer, she had difficulty responding to open-ended questions on cross-examination.

The Commission's finding that the opinions of Drs. Musich and Wilkey were flawed as the result of an incomplete medical history—and in conjunction with that finding, its award of 15% permanent partial disability to the body as a whole with regard to the claimant's back injury—are not against the overwhelming weight of the evidence. We deny the claimant's first point.

## Points II and III

In her second point, the claimant contends that the Commission erred in denying reimbursement for past medical expenses. In her third point, the claimant asserts the Commission erred in denying her future medical benefits. We consider these points together.

Section 287.140.1 provides in pertinent part:

In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury . . . .

The employer shall have the right to select the health care provider. Section 287.140.10. Only when the employer fails to provide medical care is the employee free to choose her own provider, and to assess those costs against her employer. *Poole,* 328 S.W.3d at 291. The claimant bears the burden to prove that past medical treatment flowed from the work injury. *Bowers v. Hiland Dairy Co.,* 188 S.W.3d 79, 87 (Mo.App. S.D.2006). Similarly, if the claimant shows by reasonable probability that she needs additional medical treatment as a result of her work-related accident, such evidence will support an award of future medical benefits. *Poole,* 328 S.W.3d at 292.

Dr. Randolph evaluated the claimant in late March 2000, some nine months after the work-related injury to the claimant's back. Dr. Randolph found that the claimant had reached maximum medical improvement, and did not require trigger-point injections at that time. The claimant testified that she sought additional medical treatment from her employer in April 2000, but that the employer told her she was "on her own." Drs. Musich and Wil-

key testified that the claimant's past medical treatment was reasonable and causally related to the June 1999 injury, and that she would continue to need pain medication in the future as a result of that injury.

The Commission found that the claimant failed to prove that her medical expenses incurred after March 28, 2000 flowed from the 1999 work injury. The Commission found Dr. Randolph's March 28, 2000 report of maximum medical improvement the most credible because that evaluation occurred far closer in time to the 1999 injury than the evaluations of Dr. Musich in 2004 and 2008, and Dr. Wilkey in 2009, and that Dr. Randolph's report more accurately reflected the treatment records regarding the claimant's recovery. The Commission also stated that the passage of time may have "clouded" the claimant's recollection of her injury and treatment, thus rendering her experts' opinions that were based in part on her recollected history less credible.

For these reasons, the Commission denied the claim for past medical expenses in the stipulated amount of $163,422.61. Having determined that the opinions of Drs. Musich and Wilkey were not credible for the foregoing reasons, the Commission also found that the claimant failed to prove the need for future medical expenses, and denied the claim for future medical care.

Again, the Commission determines the credibility of witnesses, and on review, we cannot disturb the Commission's acceptance or rejection of testimony unless it goes against the overwhelming weight of the evidence. *Id.* at 290. The Commission was free to find Dr. Randolph's opinion more credible and to resolve conflicting evidence between the medical experts' opinions. We deny the claimant's second and third points.

## Point IV

In her fourth point, the claimant contends the Commission erred in denying permanent total disability benefits against the Second Injury Fund.

In order to recover permanent total disability benefits from the Fund, a claimant must prove that the last compensable injury resulted in permanent partial disability, and combined with pre-existing permanent partial disabilities to render her permanently and totally disabled. *Dunn v. Treasurer of Missouri*, 272 S.W.3d 267, 272 (Mo.App. E.D.2008). The test for permanent total disability is the claimant's ability to compete in the open labor market because it measures the claimant's potential for returning to employment. *Id.* The claimant bears the burden of proving all elements of her claim for permanent total disability benefits. *Id.* at 275.

Here, the Commission determined that the claimant suffered a compensable injury in November 2002, which resulted in 15% permanent partial disability of the left shoulder. The Commission determined that the claimant's disability from the shoulder injury and her 15% permanent partial disability of the body as a whole resulting from the June 1999 injury, combined to create an enhancement of 10% permanent partial disability for which the Second Injury Fund was liable. The Commission determined, however, that evidence that the last injury combined with her pre-existing permanent partial disability to render her permanently and totally disabled was not credible.

The Commission found that Dr. Musich's 2008 opinion was not credible because he expressed a general opinion that the claimant would be permanently and totally disabled if she was unable to obtain and maintain employment in the open la-

bor market. This is not even an opinion, but more accurately a general statement of the law. The Commission also faulted Dr. Musich's general conclusion that the claimant's back and shoulder injuries combined to result in significantly greater permanent disability than their simple sum when he did not explain how, or by what mechanism, the two injuries combined for this result.

Likewise, the Commission found that Mr. England's opinion was not supported by the medical record. The Commission determined that while the record may support a finding that the claimant could not return to physically demanding work on the employer's assembly line, it did not support a finding that she was unable to compete in the open labor market for employment of any kind. Furthermore, the record shows that the claimant worked for nearly two more years with the employer following her 2002 shoulder injury.

■ When the Commission expressly states that it does not believe uncontradicted or unimpeached testimony, then we must defer to the Commission's credibility findings. *Id.* at 273. We deny the claimant's fourth point.

### Conclusion

Competent and substantial evidence supports the Commission's award. And because all issues on appeal hinge on the Commission's credibility determinations, we defer to the Commission and affirm the award.

KATHIANNE KNAUP CRANE, P.J., and KENNETH M. ROMINES, J., concur.