Kathleen GIBSON–KNOX, Appellant,

v.

CLASSIC PRINT, Respondent.

No. 27295.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 27, 2006.

Susan L. Brown, Brown and Crouppen, P.C., St. Louis, for appellant.

J. Bradley Young, Roberts, Perryman, Bomkamp & Meives, P.C., St. Louis, for respondent.

KENNETH W. SHRUM, Presiding Judge.

In this workers' compensation case, the Labor and Industrial Relations Commission of Missouri ("Commission") denied Kathleen Gibson–Knox ("Claimant") benefits. Her claim for benefits is based on a carpal tunnel syndrome condition that she asserts was work-related. An administrative law judge ("ALJ") had ruled favorably to Claimant, but Commission reversed that award. Claimant appeals to this court, alleging Commission's decision was unsupported by sufficient competent and substantial evidence. We affirm.

## STANDARD OF REVIEW

Section 287.495.1 contains the applicable standard of review.[1] *Abel v. Mike Russell's Standard Serv.*, 924 S.W.2d 502, 503 (Mo.banc 1996). Only one of the grounds listed in that statute, however, is pertinent here: "The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award ... (4)[if] there was not sufficient competent evidence in the record to warrant the making of the award." § 287.495.1.

In reviewing a Commission decision, this court "must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel*

*Erection,* 121 S.W.3d 220, 222–23[1] (Mo. banc 2003). Whether the Commission's decision is supported by competent and substantial evidence is determined "by examining the evidence in the context of the whole record." *Id.* at 223. It is only in "rare" cases that a Commission award is contrary to the overwhelming weight of the evidence. *Id.*

## FACTS

Claimant began working for Mike Bleile and his company, Classic Print, in April 2001.[2] She was hired as an "accountant/bookkeeper," but her duties also included answering the telephones, waiting on customers, and making copies. Sometime between April and June 2003, Claimant first experienced problems with her hands. In October 2003, she finally sought medical treatment as her "hands were going numb."

On October 27, 2003, Claimant visited her family physician, Dr. Osborn. Initially, he diagnosed that the numbness in Claimant's hands "probably" resulted from "carpal tunnel syndrome" and he would "give her a note saying this *could* be work related and [see] if she can get this under work mans [sic] comp." (Emphasis added.) On that same day, Dr. Osborn also gave Claimant a note claiming that the numbness was *"definitely* work related." (Emphasis added.) After this doctor visit, Claimant continued working for Employer, but was terminated in February 2004 as the company was downsizing.

Before Claimant was terminated in February 2004, she filed a workers' compensation claim for benefits, alleging a work-

---

1.  All statutory references are to RSMo (2000), unless indicated otherwise.

2.  When referring solely to the company, we use the term "Employer." When referring to the owner, we use his surname.

related injury to her left and right wrists. At the hearing before the ALJ, Claimant testified that she spent seven hours per day typing, i.e., her employment duties were the substantial factor causing her bilateral carpal tunnel syndrome. On the other hand, Bleile testified via deposition that Claimant only spent ninety minutes per day typing.

The amount of time spent typing per day was the critical issue at the hearing. This followed from the expert medical testimony. Two doctors, Woodward and Koo, opined that the carpal tunnel syndrome could be caused by other illnesses, namely, hypothyroidism and diabetes. The doctors claimed, however, that if Claimant typed over four to five hours per day, the injury would be considered work-related. Dr. Koo clarified her opinion, stating that this must be sustained or constant typing such as thirty minutes out of an hour.

The ALJ rendered his decision and expressly found that Claimant and her witnesses were credible. The ALJ found that Claimant typed for more than five hours per day and that this work was a substantial factor in her bilateral carpal tunnel syndrome. Employer appealed to the Commission which reversed the ALJ's award. The Commission's decision, like the ALJ's, turned on a credibility determination:

> "On cross-examination, [Claimant's] job duties were thoroughly discussed, especially the work entailed by the use of QuickBooks. The Commission finds this cross-examination and the corresponding answers enlightening and probative as to whether or not there was a possi-

ble exposure leading to the contraction of the alleged occupational disease, carpal tunnel syndrome, vis-a-vis the condition being resultant of a non-occupational cause.

> "In addition to the cross-examination of [Claimant] concerning what her job duties actually entailed, the Commission also finds extremely enlightening and probative the testimony of [Bleile]. [Bleile's] description of [Claimant's] job duties differed remarkably from [Claimant's]; and indicated little if any type of sustained repetitive activities performed by [Claimant]. We accept his testimony as being more credible than the testimony of [Claimant]."

This appeal by Claimant followed.[3]

## DISCUSSION AND DECISION

■ In her only point on appeal, Claimant alleges the Commission erred when it reversed the ALJ's award because its decision was not based on sufficient competent and substantial evidence. Claimant argues the Commission's decision to believe Bleile's testimony "was not reasonable." Claimant's brief is devoted to showing why she and her witnesses should be believed over Employer and its witnesses.

In essence, Claimant asks this court to substitute our judgment for that of the Commission. Pointing to the fact that the ALJ heard "live" testimony, Claimant argues that we should accept the ALJ's credibility determination (favorable to Claimant) over that rendered by the Commission. This we cannot do.

■ Absent fraud, "the findings of fact made by the commission within its

3. The Commission's reference to "Quick-Books" relates to the testimony from Claimant concerning the type of computer program she used while working for Employer. Claimant also testified that she did work for another company owned by Bleile operating out of the same building as Employer. This was an appraisal business and Claimant testified she performed certain bookkeeping duties for them, using the same computer system.

powers shall be conclusive and binding." § 287.495.1. "The Commission is the sole judge of the weight of the evidence and credibility of the witnesses." *Negri v. Continental Sales & Serv.*, 139 S.W.3d 565, 569[5] (Mo.App.2004). This is not to say that the ALJ's superior vantage point in viewing live testimony should be disregarded by the Commission. The Commission should take into consideration the credibility determinations made by the ALJ. *Kent v. Goodyear Tire and Rubber Co.*, 147 S.W.3d 865, 871[6] (Mo.App.2004). Obviously, when the ALJ is presented with live testimony, he or she is in a better position to judge a witness's credibility rather than the Commission in examining a cold record. *Id.* But, it must always be remembered that when the Commission reviews an award by an ALJ, the Commission "is not bound to yield to his or her findings, including those relating to credibility, and is authorized to reach its own conclusions." *Id.* at 871[7].

The *Hampton* case illustrates how the foregoing principles apply in a factual context analogous to what occurred here. There, the ALJ heard the live testimony of the employee and expert testimony came in via deposition and medical records.[4] After seeing and hearing the *Hampton* claimant testify, the ALJ found him only partially credible and awarded him 25% permanent partial disability. *Hampton*, 121 S.W.3d at 221. In reviewing the cold record, the Commission reversed the ALJ because it believed the employee was "fully credible," i.e., the Commission apparently considered the ALJ's credibility call, but rendered its own independent judgment. *Id.* at 222. The Commission then awarded him permanent and total disability.

On appeal, the Missouri Supreme Court affirmed the Commission's credibility determination. The court did so despite the fact that the record contained contrary medical evidence and despite the fact that the ALJ heard the live testimony of the employee and found him only partially credible. *Id.* at 221–24.

We see little difference in the case at bar. Here, the Commission found the testimony of Bleile more credible than the testimony of Claimant. Even though Claimant testified in person before the ALJ, the Commission was not bound to follow the ALJ's credibility call. *Id.* at 223–24. Moreover, Claimant presents no evidence or argument that the Commission failed to consider the ALJ's credibility determination. *Kent*, 147 S.W.3d at 871. Although Bleile's testimony was presented via deposition, the Commission was free to believe that testimony and reach its own independent conclusions on the credibility of other witnesses. *See Hampton*, 121 S.W.3d at 223–24; *Kent*, 147 S.W.3d at 871; *Houston v. Roadway Express, Inc.*, 133 S.W.3d 173, 179–80 (Mo.App.2004). Finding no fraud, we are bound by those findings of fact. *Abel*, 924 S.W.2d at 503; § 287.495.1.

If Claimant were the only witness testifying to the amount of time she spent typing per day and if the Commission made no express finding that her testimony was simply to be disbelieved, then this court might be faced with one of those "rare" cases where the Commission's decision was contrary to the overwhelming weight of the evidence. But, those are not our facts. We are faced with two diamet-

---

4. Although the *Hampton* opinion implies the testimony there was presented as we have stated, it is not totally clear on that subject. However, examination of the briefs filed with the Supreme Court of Missouri in *Hampton*— accessible via the Court's website—confirms what we have stated, namely, the *Hampton* employee's testimony was the only "live" evidence.

rically opposed pieces of testimony. The Commission must make the determination of what is to be believed.

We would be remiss if we failed to note that Commission's decision to believe Bleile is further supported by other testimony in the record. For instance, the employee who took over Claimant's job (Sarah Bull) testified as to how the QuickBooks program works:

> "I only have to type however many letters it takes to get the vendor's name or the name to pop up. And it pops up, and then I hit tab, and then enter the dollar amount, tab. That writes it out for me. Write maybe a short memo on what it's for."

Moreover, Bull testified that there is no constant typing such as for longer than five or ten minutes.[5]

Similarly, Dr. Koo also testified as to her knowledge with the QuickBooks program. As the Commission found, Dr. Koo used the computer program at work and at home; consequently, she was familiar with how it operates. Dr. Koo was asked to assume that Claimant used QuickBooks for seven hours per day and if that assumption would affect her opinion. She responded: "If that's what her activity entailed for her eight-hour day, then I would say that definitely her work had no contributing factor or is in any way associated with her development of her carpal tunnel syndrome." Apparently, this is based on the fact that the program, as Bull testified, is not one in which constant or sustained typing is required.

Simply stated, Bleile's testimony coupled with that from Bull and Dr. Koo fully supports the Commission's decision. To accept Claimant's argument would ignore our standard of review. The Commission was fully entitled to disbelieve Claimant and her witnesses and accept the testimony preferred by Employer.[6] Point denied.

The decision of the Commission denying workers' compensation benefits to Claimant is supported by sufficient competent and substantial evidence and is not against the overwhelming weight of the evidence. The Commission's decision is affirmed.

GARRISON, J., and BATES, C.J., concur.

---

5. The ALJ should be commended on his thoughtful analysis of the evidence; however, he failed to mention Bull's testimony which seemingly contradicts Claimant's description of work duties.

6. This is especially true when none of Claimant's witnesses could confirm how long each day she spent typing. They merely testified that she did some bookkeeping work for them. From this, the ALJ extrapolated that the work would obviously take longer than four to five hours because she did work for at least three appraisers. However, there was no evidence indicating how long it took to enter each appraiser's individual information. Moreover, the "logbook" work she testified she did for the appraisers appears to be merely accounts receivable and payable work that would not require sustained typing.