Bruce **KEAWEEHU,** Claimant–Appellant,

v.

**7–ELEVEN, INC.,** Employer–Respondent,

and

**State of Missouri, Division of Employment Security,** Respondent.

No. SD 30677.

Missouri Court of Appeals, Southern District, Division One.

Feb. 24, 2011.

Rehearing Denied March 11, 2011.

Application for Transfer Denied April 26, 2011.

---

James D. McNabb, Springfield, MO, for Appellant.

Bart A. Matanic, Jefferson City, MO, for Respondent, State of Missouri, Division of Employment Security.

DON E. BURRELL, Judge.

Bruce Keaweehu ("Claimant") appeals the Labor and Industrial Relations Commission's ("the Commission") determination that he was disqualified from receiving unemployment benefits because he was fired for misconduct related to work. Because the testimony of Claimant's supervisor provided sufficient, competent evidence of such misconduct, we affirm.

### Factual and Procedural Background

When Claimant filed for benefits, his employer, 7–Eleven, Inc. ("Employer"), contested the claim by filing a letter of protest with the Missouri Division of Employment Security ("the Division"). Em-

ployer's letter stated that "[C]laimant was discharged for violation of company policy and procedures. Claimant sold beer to a minor. Claimant had been aware of these policies at the time of hire." The protest was reviewed by a deputy and denied on the ground that Claimant's "discharge was not for misconduct connected with work" because Employer "did not provide specific information [establishing that Claimant had sold alcohol to a minor] to the Division when given the opportunity." Employer appealed the deputy's determination to the Division's Appeals Tribunal ("the Appeals Tribunal"), which held a hearing on the matter by telephone conference call. Claimant and Employer's area supervisor, Bill Ward ("Ward"), testified at that hearing.

### The Evidence Adduced at Hearing

Ward testified as follows. Claimant worked for Employer as a store night clerk from July 23, 2009, to September 24, 2009.[1] Employer regularly used a "minor shopper" to attempt to purchase alcohol in Employer's stores to see if employees were following Employer's guidelines on selling alcohol. Claimant violated those guidelines by selling beer to the minor shopper. Ward arranged to meet with Claimant on September 25th to discuss Claimant's violation of Employer's guidelines on selling alcohol and keeping too much money in his cash register.

Ward described the meeting as follows:

Q. Approximately how long did the meeting between yourself and [Claimant] last on September 25, '09?

A. Two to three minutes.

Q. All right. Can you tell us what took place in that?

A. I was going over some of his training and the fact that he knew how

to do a job and he was trained and I was asking him to make sure that he understood how important it was, and that—that's about as far as we got.

Q. What, if anything, did [Claimant] say in response to your counseling efforts?

A. He basically told me he didn't really want to listen to this. If he was going to be fired, just fire him.

Q. Did you come to some conclusion during the course of this discussion with [Claimant]?

A. Yes. I concluded that I couldn't with good conscious [sic] send him back out to work and to do the things that were important because he didn't seem concerned about our guidelines.

Q. Now you indicated there were two items that you wanted to discuss with [Claimant], the sale of alcohol to minors. Were you able to begin or get through part of that discussion with him?

A. Yes. We were well into that discussion whenever he seemed really uninterested and like he wanted it to be over.

Q. Did you ever get to speak to [Claimant] about your concerns about having too much money in the drawer?

A. No.

Q. After [Claimant] indicated that—well, I don't want to put words in your mouth, sir. Can you give me [ ][,] as best you can[,] the quote that [Claimant] said about listening to you and—and the firing?

A. He said, ["]I don't want to have to listen to this. If you're going to fire me, fire me.["]

Q. Did you say anything in response to [Claimant] at that point?

1. The Commission found that Claimant was terminated on September 25, 2009.

A. Yes. I said, ["]in that case[,] you are fired.["]

Q. And, lastly, if [Claimant] had take-requested additional training in these areas would that have been offered?

A. I would have personally went [sic] over some things and got [sic] with his manager if he—he needed some more training on it, yes.

Ward testified that he planned on counseling Claimant about his mistakes, but that he had not planned on firing Claimant.

Claimant presented a different version of what had occurred. Claimant testified that Ward had called him on September 25th "and said that [Claimant]'s shifts would be covered and to meet [Ward] at the main office ... on 9–28–2009." Claimant testified that Ward discharged him from employment during that meeting on September 28th. When asked to describe what happened during his meeting with Ward, Claimant testified as follows:

A. At which time he proceeded to talk down at me. Seems like he was a little angry. And then at that point I had asked him if he was firing me, and he said yes. And at that point I turned over my uniforms and left the property.

Q. Did you have any further statement to provide?

A. No. That would—that's what happened on that date.

On cross-examination, Claimant admitted that Ward had not asked him to bring his uniforms or anything else with him to the meeting and that Ward did "attempt[ ] to speak to [him] about the purpose of alcohol by a minor." Claimant testified that he took his uniforms with him to the

meeting because he "just figured that if [Ward] was calling me and [Ward] had covered my shift then [Ward] wouldn't be placing me back onto my shift that he was terminating me at the time." Claimant denied saying anything like "I don't have to listen to this; if you're going to fire me, fire me[.]"

### The Decision of the Appeals Tribunal

After hearing the testimony and considering the arguments of counsel, the Appeals Tribunal made the following factual findings:

[Ward] met with [Claimant] in order to warn [Claimant] about selling alcohol to a minor and to instruct [Claimant] on the policy for selling alcohol. [Claimant] indicated that he did not want to listen to the warning and instructions and asked if he would be discharged. The Appeals Tribunal finds credible [Ward]'s testimony that he discharged [Claimant] for disregarding [Ward]'s warning and instructions.

The Appeals Tribunal found these facts demonstrated "a deliberate disregard of the standards of behavior that an employer has the right to expect from an employee and a willful disregard of the employer's interest" that disqualified Claimant from receiving benefits and reversed its deputy's contrary decision.

After receiving the decision of the Appeals Tribunal, Claimant timely filed an application for review with the Commission. In his application, Claimant asserted that the Appeals Tribunal "veer[ed] off course" in basing its decision on Claimant's meeting with Ward on September 28, 2009.[2] Claimant's position was that he was terminated on September 24, 2009, the

---

2. As indicated by the hearing testimony, the date of Claimant's meeting with Ward was disputed. While Claimant said the meeting occurred on September 28th, Ward testified that it had taken place on the 25th.

date he was alleged to have sold alcohol to the minor shopper and that

> when [Claimant] asked on the 28th if he was discharged and received the affirmative response, his disregard of subsequent gratuitous "warnings and instructions" [wa]s not a basis for finding misconduct. Any conduct subsequent to his discharge on the 24th was unpaid and not "connected to his work[,]" which was over and done.

### The Decision of the Commission

In a 2–1 decision, the Commission agreed with the result reached by the Appeals Tribunal—that Claimant had committed misconduct connected with his work and was disqualified from receiving benefits—but issued a "supplemental decision" to "address certain issues and make additional findings[.]" That supplemental decision adopted and incorporated the findings and conclusions of the Appeals Tribunal, "except as otherwise pointed out [in the Commission's supplemental decision]." [3]

The Commission noted that "a key issue in this case is the credibility of the parties." It further noted that

> [t]he Commission has access to both a transcript of the telephone hearing in this matter and the audiotapes from which such transcripts are created. The [c]ommissioners can hear the same voice tones, hesitations, and other oral peculiarities as the Appeals Tribunal. Moreover, the Commission may be better able to coldly study the testimony and

any inconsistencies because it has a written transcript from which to work and more than one person weighing the testimony. Consequently, the rule applicable to administrative telephone conference hearings is that "the Commission, and not the referee, is the trier of fact, with the right and duty to pass upon the credibility of witnesses." *Husky Corporation v. Labor & Indus. Rel. Comm.*, 628 S.W.2d 378, 379 (Mo. App.1982).

The Commission then found Ward's testimony to be more credible than Claimant's and affirmed the denial of benefits.[4] This appeal timely followed.

### Standard of Review

We may reverse, modify, set aside, or remand a decision by the Commission only on the following grounds: "1) [t]hat the [C]ommission acted without or in excess of its powers; 2) [t]hat the decision was procured by fraud; 3) [t]hat the facts found by the [C]ommission do not support the award; or 4) [t]hat there was no sufficient competent evidence in the record to warrant the making of the award." Section 288.210;[5] *Buckley v. Safelite Fulfillment, Inc.*, 299 S.W.3d 757, 760 (Mo.App. S.D. 2009). If "there was no sufficient competent evidence in the record to warrant the making of the award[,]" then the decision of the Commission may not stand. Section 288.210(4). "In determining whether competent and substantial evidence was pre-

---

3. One of the findings "otherwise pointed out" was that while the Appeals Tribunal found that Claimant was fired on September 24, 2009, the Commission found "[t]his finding is contrary to the testimony of the parties" and determined that Claimant was discharged on September 25, 2009.

4. The importance of the credibility determination in this case is illustrated by the fact that the opinion filed by the dissenting commis-

sioner was not based on any disagreement about the applicable law but that he found "the testimony of [C]laimant to be more credible and more in line with logic and common sense."

5. All references to section 288.210 are to RSMo 2000. All references to section 288.030 are to RSMo Cum.Supp.2009.

sented, we examine the evidence in the record as a whole." *Freeman v. Gary Glass & Mirror, L.L.C.*, 276 S.W.3d 388, 391 (Mo.App. S.D.2009).

■ "Deference is given to the Commission's determinations as to the weight of the evidence and the credibility of the witnesses." *Comeaux v. Convergys Customer Mgmt. Group, Inc.*, 310 S.W.3d 759, 762 (Mo.App. E.D.2010). When "the evidence supports two opposite conclusions, we are bound by the Commission's resolution of conflicting evidence." *Knobbe v. Artco Casket Co., Inc.*, 315 S.W.3d 735, 739–40 (Mo.App. E.D.2010). Absent fraud, the Commission's findings of fact are conclusive if supported by substantial and competent evidence. *Ayers v. Sylvia Thompson Residence Ctr.*, 211 S.W.3d 195, 198 (Mo.App. W.D.2007).

In contrast to the deference we give the Commission on its factual findings, whether those facts as found by the Commission constitute misconduct related to work is a question of law to be determined solely by this court. *Five Star Mfg., Inc. v. Tanksley*, 168 S.W.3d 719, 721 (Mo.App. S.D. 2005); *Williams v. Dutchtown Care Ctr., Inc.*, 313 S.W.3d 690, 692 (Mo.App. E.D. 2010).

## Analysis

■ Claimant's point relied on contends "[t]he Commission erred in determining that [Claimant] committed misconduct in connection with his work, disqualifying him from unemployment benefits as defined by 288.030(23) because there is insufficient competent evidence to support such determination." Claimant's point fails to comply with the requirements of Rule 84.04 as it does not state the specific legal principle that supports Claimant's claim of error within the context of the facts of his particular case. *See* Rule 84.04(d)(2)(C).[6]

■ In the argument portion of his brief, Claimant then asserts that the Commission's "findings do not amount to statutory misconduct such that [C]laimant should be disqualified from receiving unemployment benefits." No such contention is contained in Claimant's point relied on.[7] We take this argument to be a challenge to the legal conclusion that such actions would constitute misconduct connected with work. Because the deficiency of Claimant's brief does not materially impede appellate review, we will review his claims *ex gratia*.

As earlier noted, the Commission specifically found "the testimony of [Ward] more credible than that of [C]laimant"; that Ward's purpose in meeting with Claimant on September 25th was to counsel Claimant, "not to discharge him"; and that Claimant "told [Ward] that he didn't want to listen to him and to just fire him if he was going to do so." Finally, the Commission found that "[Ward] discharged [C]laimant because of [C]laimant's comments." Ward's testimony was sufficient, competent evidence to prove that Claimant told him he "didn't want to listen to him and to just fire him if he was going to do so." *See Gibson–Knox v. Classic Print*, 184 S.W.3d 201, 204–05 (Mo.App. S.D.2006) (When faced with two diametrically opposed pieces of testimony, the Commission

---

6. All rule references are to Missouri Court Rules (2010).

7. "Issues raised only in the argument portion of the brief are not preserved for review." *Rhodus v. McKinley*, 16 S.W.3d 615, 621 (Mo. App. W.D.2000). *See also Lusher v. Gerald Harris Constr., Inc.*, 993 S.W.2d 537, 544 (Mo. App. W.D.1999) (refusing to consider on appeal an argument that required information was not presented to the claimant as it was not stated in the point relied on).

"must make the determination of what is to be believed").

That fact having been appropriately found by the Commission, the question for this court then becomes whether the statement constituted misconduct connected with work as defined by 288.030.1(23). *See Freeman*, 276 S.W.3d at 391. Such misconduct is defined as "an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]" Section 288.030.1(23).

■■ The employer has the burden of proving misconduct by a preponderance of the evidence. *White v. St. Louis Teachers Union, Div. of Emp't Sec.*, 217 S.W.3d 382, 388 (Mo.App. W.D.2007). "A single instance of intentional disobedience of an employer's directive can constitute misconduct." *Finner v. Americold Logistics, LLC*, 298 S.W.3d 580, 584 (Mo.App. S.D. 2009).

Both parties cite *Dixon v. Stoam Indus., Inc.*, 216 S.W.3d 688 (Mo.App. S.D.2007).[8] In *Dixon*, Dixon's supervisor asked him to move to a different project. Dixon told his supervisor that "[he] didn't want to" and that "he was working on something else and he 'wasn't going to stop what [he] was doing and go over there and do that the rest of the night.'" *Id.* at 691 & 694 n. 2.

Dixon was immediately terminated. *Id.* at 691. This court subsequently upheld the Commission's denial of unemployment benefits, holding that Dixon's actions constituted misconduct. *Id.* at 693.

Claimant argues that his situation is distinguishable from *Dixon* because he did not defiantly refuse to comply with a directive. We disagree. In fact, less was required of Claimant than was required of Dixon. All Claimant had to do was *listen* to Ward's instruction, but he refused to do even that. We hold that Claimant's refusal to receive instruction from Ward constituted "a deliberate disregard of the standards of behavior that an employer has the right to expect from an employee and a willful disregard of the employer's interest." Thus, the Commission correctly found that Claimant was barred from benefits due to misconduct connected with work.

Claimant's point is denied, and the decision of the Commission is affirmed.

BARNEY, P.J., and LYNCH, J., concur.

---

8. A case cited by neither party, *TAMKO Bldg. Prod., Inc. v. Frankoski*, 258 S.W.3d 575 (Mo. App. S.D.2008), involved a situation similar to the case at bar, but which we find distinguishable. In *TAMKO*, the evidence demonstrated that the terminated employee had had a heated discussion in a meeting with his supervisor but actually complied with his supervisor's demand immediately after the meeting ended. *Id.* at 577. Here, Claimant did not return and express a willingness to listen to Ward or give any other indication that he had any intention of following Ward's directions.