

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

CONSTANCE COMPARATO,

      Appellant,

vs.

LYN FLEX WEST, ET AL.,

      Respondent.

)  No. ED108870
)
)  Appeal from the Labor and
)  Industrial Relations Commission
)
)
)
)
)  Filed: November 3, 2020

## Introduction

Constance Comparato ("Claimant") appeals the Labor and Industrial Relations Commission's ("Commission") decision affirming the Administrative Law Judge's ("ALJ") denial of Workers' Compensation benefits for Claimant's left shoulder injury. Claimant was a factory worker for Lyn Flex-West ("Employer"). Claimant reported pain in her shoulder to Employer for the first time on March 4, 2013. Claimant underwent shoulder surgery on November 21, 2013.

Following a hearing on July 9, 2019, the ALJ denied Claimant's claim, finding Claimant failed to prove her shoulder injury was caused by her work for Employer. The Commission affirmed the ALJ's decision by a 2-1 vote and provided a supplemental written opinion. The dissenting Commissioner would have reversed the ALJ's judgment.

On appeal, Claimant argues the Commission erred in denying benefits to Claimant for three reasons. In Point I, Claimant argues the Commission erred by finding she did not meet her burden of proof she sustained an occupational disease as the result of her work for Employer because "the Commission formed its own medical opinion of causation and added an element of proof to causation." In Point II, Claimant argues the Commission erred in finding Doctor Strege's testimony more credible than Doctor Poetz's opinion and claims Doctor Strege's opinion is not supported by competent and substantial evidence. In Point III, Claimant argues the Commission erred in finding Claimant could not recover benefits from Employer and the Second Injury Fund ("SIF") (together "Respondents") because the Commission's award was against the overwhelming weight of the evidence.

Point I is denied because we review the decision of the Commission not the ALJ. The Commission independently weighed competing expert causation testimony, it did not increase Claimant's burden of proof. Points II and III are denied because Claimant failed to follow the mandatory analytical formula required to establish the Commission's findings were unsupported by substantial and competent evidence. Further, Claimant's arguments would have failed even if she followed the formula because the Commission's findings were supported by substantial and competent evidence. We affirm.

**Factual and Procedural History**

Claimant began working for Employer in 1998 and worked full-time until her alleged injury in 2013. Claimant's job was to produce and assemble shoe parts. Her duties consisted of operating several machines. Some machines required Claimant to stand, while others required her to sit. Claimant is 5 feet, 2 inches tall and sometimes had to stand on a skid to have enough height to work. Most of Claimant's tasks involved repetitive motion and sometimes required her

2

to work at shoulder-height or above. Claimant took turns operating each machine with her coworkers depending on where she was needed from day to day.

Claimant asserts seven machines contributed to her shoulder injury. She operated a laminating machine, which required her to repeatedly lift, push, and pull at shoulder level while standing. She claims the machine would sometimes vibrate or jerk, which put additional stress on her arms. Claimant operated a hot glue machine, which required her to continuously move her arms while seated. Claimant operated a stamping machine, which required her to rapidly stamp sizes into shoe soles with her left hand. She testified operating the stamper caused significant arm pain. Claimant operated an embossing machine, which required her to reach up and push knobs above shoulder-level. Claimant also operated a skiving machine, which required her to quickly push shoe components into the machine with her left hand. Claimant operated a cutting machine, which required her to operate the knobs with her arms continuously above shoulder-height. Finally, Claimant used a six-pound spray gun, which she operated at shoulder-height or above. She testified the spray gun was the most painful task for her shoulder.

Claimant first sought treatment for her shoulder on March 4, 2013. On July 15, 2013, Dr. Christian Linz diagnosed Claimant with degenerative osteolysis of the acromioclavicular joint and impingement syndrome. Claimant was treated with a cortisone injection in her left shoulder. Dr. David Strege examined Claimant on Employer's behalf on August 7, 2013. Dr. Strege diagnosed Claimant with rotator cuff tendinitis and impingement syndrome but did not believe further treatment was required. Dr. Strege also did not believe Claimant's work duties were the prevailing factor or cause of her injury, noting Claimant's movements at work, while repetitive, were generally not strenuous.

3

On October 7, 2013 Claimant returned to Dr. Linz. Dr. Linz diagnosed Claimant with left shoulder impingement syndrome with acromioclavicular syndrome, acromioclavicular joint osteoarthritis, and rotator cuff tendinitis/partial thickness tearing. An MRI revealed Claimant had a torn supraspinatus muscle and infraspinatus tendon, with partial tears in the distal aspect of the supraspinatus tendon and deltoid muscle. Claimant also had degenerative changes in the acromioclavicular joint, glenohumeral joint, and greater tuberosity. Dr. Linz performed surgery on Claimant's shoulder on November 21, 2013. Claimant underwent physical therapy until February 3, 2014 and returned to work on March 3, 2014.

Upon returning to work, Claimant had to reduce her hours and sit more frequently than before her injury to manage her shoulder pain. On May 8, 2014 Dr. Robert Poetz examined Claimant and concluded her shoulder had 35% Permanent Partial Disability ("PPD") after her surgical repair. Dr. Poetz opined the pace of the job and excessive repetitive motion exposed Claimant's arms to an abnormal level of stress and were the substantial and prevailing factor causing the injury. Noting Claimant's preexisting physical conditions,[1] Dr. Poetz imposed permanent restrictions on Claimant's ability to push, pull, lift, use her upper extremities overhead, excessively or repetitively use her upper extremities, or use equipment that vibrates, impacts the upper extremities, or creates torque. These restrictions effectively precluded Claimant from continuing to work in her position with Employer.

Dr. Strege reexamined Claimant on August 24, 2014. He agreed Dr. Linz properly performed surgery on Claimant's shoulder and concluded Claimant could return to work with Employer. Doctors Poetz and Strege disagreed about the cause of Claimant's injury. Dr. Poetz

---

[1] Claimant had several preexisting conditions at the time of her shoulder injury, including bilateral knee degenerative joint disease since 2002, a left index finger amputation in 2008, diabetes mellitus since 2007, and depression and anxiety since the 1980s. Her knee condition makes long periods of standing difficult. Claimant takes Oxycodone for her knee and shoulder pain.

4

opined Claimant's activities as a factory worker subjected her shoulder to excessive strain beyond what most people experience in their day-to-day lives. Dr. Strege noted Claimant's shoulder condition is normal in individuals around Claimant's age and testified her condition likely was caused by regular activity over time rather than a workplace injury.

The ALJ heard Claimant's claim for compensation on July 9, 2019 and issued an award denying benefits on September 12, 2019. Claimant was sixty-eight years old when the hearing was held. The ALJ found Claimant did not prove she had an occupational disease resulting from her work for Employer. The ALJ also found Claimant failed to specify what repetitive motion caused her shoulder injury or identify the type and duration of activity responsible for her injury.

Because Claimant was found not to have an occupational disease, the ALJ concluded Respondents were not liable to her.

Claimant appealed the ALJ's award to the Commission. On March 27, 2020 the Commission issued its Final Award, affirming the ALJ. The Commission modified the ALJ's award, specifically finding Dr. Strege's opinion more credible than Dr. Poetz's opinion. This appeal follows.

Claimant raises three points on appeal. In Point I, Claimant argues the Commission acted in excess of its powers and erred as a matter of law by finding Claimant did not meet her burden of proof to establish she sustained an occupational disease from her work for Employer. Claimant argues the Commission improperly formed its own medical opinion of causation and added an element of proof to the causation standard. In Point II, Claimant argues the Commission erred by finding Dr. Strege more credible than Dr. Poetz. Claimant argues the Commission could not have found Dr. Strege's opinion more credible because it was inconsistent

and incomplete. Finally, Claimant argues the Commission erred in its conclusion that Claimant is ineligible for compensation because the Final Award is not supported by substantial and competent evidence.

## Standard of Review

This Court's review of the Commission's Final Award is governed by section 287.495.1 of the Missouri Revised Statutes.[2] We review only questions of law and may only modify, reverse, remand, or set aside an award if (1) the Commission acted without or in excess of its powers, (2) the award was procured by fraud, (3) the facts found by the Commission do not support the award, or (4) there was not sufficient competent evidence in the record to warrant making the award. *Id.* To determine whether the Commission's factual determinations were supported by sufficient competent evidence, we decide "whether, considering the whole record, there is sufficient competent and substantial evidence to support the award." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

The Commission's factual findings are binding and conclusive only to the extent they are supported by sufficient competent evidence and were reached absent fraud. *Archer v. City of Cameron*, 460 S.W.3d 370, 374 (Mo. App. E.D. 2015). We are not bound by the Commission's conclusions of law or application of law to the facts. *Patterson v. Cent. Freight Lines*, 452 S.W.3d 759, 764 (Mo. App. E.D. 2015). In reviewing the Commission's decision, we view the evidence objectively and need not view the evidence and all reasonable inferences in the light most favorable to the award. *Wilson v. Progressive Waste Sols. Of Missouri, Inc.*, 515 S.W.3d 804, 807 (Mo. App. E.D. 2017).

---

[2] All statutory references are to RSMo (2019), which was the version of the statute in effect at the time of Claimant's claim, unless otherwise indicated.

**Discussion**

*Point I: The Commission did not Err in Finding Employee Failed to Prove She Sustained an*

*Occupational Disease While Working for Employer*

In Point I, Claimant argues the Commission exceeded its authority by substituting its own medical opinion of causation for the opinion of her doctor. Claimant further argues the Commission erred by adopting the ALJ's conclusion that her doctor's causation testimony was deficient. In Claimant's view, the ALJ and the Commission elevated Claimant's burden of proving causation beyond the requirements of the law by holding Dr. Poetz "merely concluded that the use of the arms at work caused her left shoulder injury" and "there was no evidence with regard to the type or duration of activity which he believed was responsible for her left shoulder complaints."

This Court reviews the findings of the Commission, not the findings of the ALJ. *Cheney v. City of Gladstone*, 576 S.W.3d 308, 314 (Mo. App. W.D. 2019). However, "to the extent that the Commission affirms and adopts the ALJ's findings and conclusions, this Court reviews the ALJ's findings and conclusions." *McDowell v. St. Luke's Hosp. of Kansas City*, 572 S.W.3d 127, 131 (Mo. App. W.D. 2019).

Claimant argues the ALJ and Commission improperly discounted Dr. Poetz's analysis because Dr. Poetz did not specify what type or duration of activity at work was responsible for Claimant's shoulder injury. Claimant argues Dr. Poetz adequately established workplace causation through his report recording Claimant's history of working at a fast pace, the repetitive arm movement in her job, and the doctor's opinion her work put "an excessive" strain on her arms. Claimant reasons the ALJ improperly formed a medical conclusion by imposing a

7

requirement that Claimant prove the specific type and duration of workplace activity that caused the injury. Claimant analogizes the ALJ's decision here to *Townser v. First Data Corp.*, a case where an ALJ and the Commission erred by ruling against the claimant because her expert's causation analysis did not rely – and was not required to rely – on an ergonomic study. 215 S.W.3d 237, 243-44 (Mo. App. E.D. 2007). Claimant argues if the ALJ made an error of law in ruling against her claim by increasing her burden of proof, the Commission also made an error of law by affirming the ALJ's decision.

Respondents argue Claimant mischaracterizes the ALJ's and the Commission's analysis. Respondents argue the Commission weighed the doctors' causation opinions and found Dr. Strege more credible than Dr. Poetz. Respondents note the Commission may weigh competing expert testimony and decide which opinion is more credible. *Townser*, 215 S.W.3d at 242.

Respondents also argue Claimant's reliance on the ALJ's analysis is misplaced because the Commission made its own findings in a supplemental opinion affirming the ALJ.

We agree with Respondents. Here the Commission affirmed the denial of causation, the ALJ's "ultimate legal conclusion," by a supplemental award. The Commission's denial of benefits was based on Dr. Strege's opinion the Claimant's "work activities were *not* the prevailing factor causing her shoulder condition" (emphasis in original). The Commission found Dr. Strege's causation "opinion more persuasive and credible than….Dr. Poetz's opinion." The Commission only adopted the ALJ award to the extent it was "not inconsistent with" its supplemental decision. Therefore, the Commission did not adopt the ALJ's reasoning *why* Dr. Poetz's opinion failed, it issued its own reasoning.

8

Contrary to Claimant's assertions, the Commission did not change the burden of proof. Claimant's argument the Commission exceeded its authority substituting its own medical opinion for the opinion of her doctor fails because the Commission did not adopt the portion of the ALJ's award Claimant relies upon in making her assertion. The Commission made an expert witness credibility determination, as discussed in greater detail in Point II.

This Court reviews the findings of the Commission, not the ALJ. *Cheney*, 576 S.W.3d at 314.

Point I is denied.

*Points II and III: The Commission did not Err by Finding Dr. Strege's Testimony More Credible than Dr. Poetz's Testimony and Denying Compensation*

A. Claimant Failed to Follow the Analytical Formula Required to Prove the Commission's Findings Were Unsupported by Substantial and Competent Evidence

Claimant argues in Points II and III that the Commission's findings were not supported by substantial and competent evidence under Section 287.485.1(4). The SIF accurately notes challenges to an award under subsection (4) *must* follow three analytical steps: (1) marshal all record evidence favorable to the award, (2) marshal all unfavorable evidence, subject to the Commission's explicit or implicit credibility determinations, and (3) show in the record how the unfavorable evidence so overwhelms the favorable evidence and its reasonable inference that the award is, in context, not supported by competent and substantial evidence. *Schlereth v. Aramark Uniform Servs., Inc.*, 589 S.W.3d 645, 652 (Mo. App. E.D. 2019). "Adherence to this analytical formula is **mandatory** . . . because it reflects the underlying criteria necessary for a successful challenge – the absence of any such criteria, even without a court-formulated sequence dooms an

9

appellant's challenge." *Id*. (citing *Robinson v. Loxcreen Co., Inc.*, 571 S.W.3d 247, 251 (Mo. App. S.D. 2017) (alteration and emphasis in original)). Claimant did not follow the mandatory analytical framework so her arguments under Section 287.495.1(4) are denied.

B. The Commission's Findings Were Supported by Competent and Substantial Evidence

Even if Claimant would have followed the mandatory analytical formula, her claims would fail. A worker's compensation claimant bears the burden of proof to show an injury was compensable. *Smith v. Capital Region Med. Ctr.*, 412 S.W.3d 252, 259 (Mo. App. W.D. 2013). The burden of proof has two parts: the burden of production and the burden of persuasion. *Id*. The burden of production is a party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder. *Id*. The burden of persuasion is the party's duty to convince the factfinder to view the facts in a way that favors that party. *Id*.

To support a finding of occupational disease, an employee must provide substantial and competent evidence that his or her disease was caused by their job rather than an ordinary disease of life. *Townser*, 215 S.W.3d at 241. The inquiry involves two considerations: (1) whether there was an exposure to the disease which was greater than or different from that which affects the public generally, and (2) whether there was a recognizable link between the disease and some distinctive feature of the employee's job common to all jobs of that sort. *Id.* "The claimant must establish, generally through expert testimony, the probability that the occupational disease was caused by conditions in the work place." *Id*. at 242.

"Acceptance or rejection of medical evidence is for the Commission" to determine. *Houston v. Roadway Express, Inc.*, 133 S.W.3d 173, 179 (Mo. App. S.D. 2004). When competing medical causation testimony is presented, it is generally the Commission's prerogative to choose which testimony to believe. *Bond v. Site Line Surveying*, 322 S.W.3d 165,

171 (Mo. App. W.D. 2010). "The Commission is free to believe whatever expert it chooses *as long as* that expert's opinion is based on substantial and competent evidence." *Cole v. Alan Wire Co., Inc.*, 521 S.W.3d 308, 315 (Mo. App. S.D. 2017) (emphasis added) (quoting *Beatrice v. Curators of Univ. of Mo.*, 438 S.W.3d 426, 437 (Mo. App. W.D. 2014)). We will affirm the decision of the Commission to accept one of two conflicting medical opinions if that decision is supported by substantial and competent evidence. *Townser*, 215 S.W.3d at 242.

Challenges to the Commission's award under Section 287.495.1(4) may only succeed if the claimant demonstrates the "absence of sufficient competent evidence; evidence contrary to the award of the Commission, regardless of quantity or quality, is 'irrelevant.'" *Nichols v. Belleview R-III Sch. Dist.*, 528 S.W.3d 918, 929 (Mo. App. S.D. 2017). The Commission may believe any expert if the expert's opinion is based on "substantial and competent evidence." *Hulsey v. Hawthorne Restaurants, Inc.*, 239 S.W.3d 156, 162 (Mo. App. E.D. 2007). In workers' compensation actions, the fact-finder determines the credibility of medical expert opinions. *Kelley v. Banta & Strude Construction Co. Inc.*, 1 S.W.3d 43, 48 (Mo. App. E.D. 1999). The Commission's credibility findings bind this Court. *Annayeva v. SAB of the TSD of the City of St. Louis*, 597 S.W.3d 196, 200 (Mo. banc 2020).

Claimant argues the ALJ and Commission could not rely on Dr. Strege's testimony because it was not "substantial and competent." Claimant argues Dr. Strege and the Commission improperly relied on the Employer-provided Physical Demands Analysis (PDA) because the PDA described Claimant's responsibilities after she returned to work on limited duty instead of her duties before the injury. Claimant argues Dr. Strege relied on the information in the PDA as

11

factual without sufficiently evaluating its accuracy.[3]  Claimant argues the PDA failed to explain the "frequency, duration, speed, vibration, resistance, or torque involved" in Claimant's job or the "extent to which she had to raise or lower her upper extremities" to operate machinery.  She reasons the PDA misled Dr. Strege, causing him to underestimate the strain of Claimant's job and reach the wrong conclusion.  Finally, Claimant argues Dr. Strege's opinion was not based on competent and substantial evidence because he considered the PDA in reaching his conclusions.

Claimant argues the ALJ and Commission erred by believing Dr. Strege's testimony over Dr. Poetz's testimony.  Claimant notes Dr. Strege testified Claimant's rotator cuff tear was due to a preexisting condition, despite Claimant's fifteen-year restriction-free employment with Employer.  Dr. Strege testified Claimant's injury likely was caused by aging, cumulative trauma, or a traumatic event but identified no single traumatic event in or out of work that caused the injury.

Respondents argue Dr. Strege's opinion was supported by substantial and competent evidence.[4]  Respondents argue Dr. Strege supported his theory of Claimant's injury by identifying degenerative changes in Claimant's shoulder that indicated Claimant's work activities were not the prevailing factor in her injury.  Specifically, Dr. Strege opined rotator cuff tendinitis in Claimant's shoulder suggested her injury was caused by ordinary wear and tear rather than workplace trauma.  Dr. Strege testified arthritic injuries like Claimant's "occur as a course of normal aging" rather than from repetitive movement.  Respondents note Dr. Strege reached his conclusions after considering a variety of evidence including examining Claimant,

---

[3] Claimant argues the PDA mischaracterized Claimant's pre-injury work responsibilities and Dr. Strege would have been misled if he relied on it in his analysis.  Dr. Strege testified he believed the PDA was consistent with Claimant's description of her duties and the other materials he reviewed, but conceded the PDA would have been more helpful if it was more detailed in its descriptions of Claimant's duties.

[4] Dr. Strege's testimony was submitted through two deposition transcripts.

taking a medical history directly from Claimant, reviewing her deposition testimony, and considering the PDA.

Although Claimant met the burden of production by introducing Dr. Poetz's report, she failed to meet the burden of persuasion. The Commission rejected Dr. Poetz's conclusion because it found Dr. Strege's analysis of Claimant's injury more persuasive. There is sufficient competent evidence in the record to support the Commission's holding. For example, Dr. Poetz's explanation of Claimant's injury was based on Claimant's medical records, Claimant's verbal description of her job duties, his review of Dr. Strege's 2013 report, and his medical evaluation. Dr. Poetz opined Claimant's work responsibilities were the prevailing factor in her injury, but his report did not explain *how* he reached that conclusion or *how* Claimant's work activities caused her injuries. Because Dr. Poetz's opinion was submitted in a report, he was never questioned about his conclusions.[5]

In contrast, Dr. Strege considered more information than Dr. Poetz, including Claimant's medical history, photographs of her surgery, personal review of radiographic testing, his two examinations of Claimant, her deposition testimony, and the PDA. Dr. Strege presented testimony that Claimant would have experienced her shoulder injuries through wear and tear at any other job or in everyday life. Dr. Strege identified rotator cuff tendinitis, arthritic conditions in Claimant's shoulder, and a "multi[–]layer chronic tear" in the rotator cuff that, in Dr. Strege's opinion, would have formed regardless of her employment. Unlike Dr. Poetz, Dr. Strege's opinions and analysis were scrutinized in two depositions.

---

[5] Dr. Poetz was not deposed and did not testify at Claimant's hearing. Claimant submitted Dr. Poetz's opinions in an expert report. "The testimony of a treating or examining physician may be submitted in evidence on the issues in controversy by a complete medical report and shall be admissible without other foundational evidence . . . ." Mo. Rev. Stat. § 287.210.7.

13

Dr. Strege testified he weighed Claimant's description of her job to him and in her deposition testimony at 90% and the PDA at 10% in reaching his conclusions. Dr. Strege also testified the PDA was "consistent" with Claimant's verbal description of her medical history and her deposition testimony. The Commission found Dr. Strege "credibly testified" the PDA "contributed minimally to his medical causation findings." Further, Claimant testified at trial although the PDA contained some activities she did not perform, the description of her work activities in the PDA was "accurate." We fail to see how Dr. Strege was misled by the PDA so his opinion is not based on substantial and competent evidence.

Dr. Strege's opinions were based on substantial and competent evidence. The Commission was within its authority finding Dr. Strege more persuasive than Dr. Poetz. We cannot reweigh the Commission's determinations regarding witness credibility or the weight given to conflicting evidence regarding the PDA. *Greer v. SYSCO Food Services*, 475 S.W.3d 655, 664 (Mo. banc 2015). Ultimately, we are presented with two dueling experts. The Commission believed Dr. Strege. That is its prerogative. *See Bond*, 322 S.W.3d at 171. Had Claimant followed the mandatory three analytical steps required by *Schlereth* her arguments would have failed. 589 S.W.3d at 652.

Claimant's arguments in Point III essentially restate why she believes the Commission should not have believed Dr. Strege's opinion over Dr. Poetz's opinion. Claimant argues if we find Dr. Strege's opinion was unsupported by substantial and competent evidence, we should hold Claimant is entitled to compensation from the Respondents based on Dr. Poetz's PPD rating. Point III fails for the same reasons as Point II.

Points II and III are denied.

14

## Conclusion

For the reasons stated above, the Commission's Final Award is affirmed.

_____
Philip M. Hess, Judge

Gary M. Gaertner, Jr., P.J. and
Michael E. Gardner, J. concur.